444 So.2d 680 (1984)
STATE BLOCK, INC.
v.
Eugene J. POCHE, Jr.
No. 83-CA-527.
Court of Appeal of Louisiana, Fifth Circuit.
January 10, 1984.
*681 Terrence J. Hand, New Orleans, for plaintiff-appellant.
Patrick C. Leitz, Metairie, for defendant-appellee.
Before CHEHARDY, GRISBAUM and DUFRESNE, JJ.
CHEHARDY, Judge.
This lawsuit arose from a dispute between a corporation and its former vicepresident/stockholder over the ownership of eight season tickets to Louisiana State University football games. The district court awarded judgment in favor of the former corporate officer, and the corporation appealed.
The following facts were established at trial:
Eugene Poche, Jr., was one of four incorporators of State Enterprises, which later changed its name to State Block, Inc., in July 1957. Poche, vice president of the corporation, was employed in the production and sales end of the business. He described his function as "public relations." In that capacity, one of his duties was to *682 entertain customers; he estimated that 75% of the customers listed in the corporate accounts receivable were his customers. He was paid a salary by the corporation, and received a bonus if the corporation made money.
At some unspecified time, apparently within a year or two after the corporation was started, Poche decided to purchase season tickets to Louisiana State University football games. He testified he did not discuss the purchase with any of the other corporate officers; he stated, "I just bought them because I enjoy football and I wanted to go. I bought the tickets and I used them as entertainment." The name on the tickets was "Eugene J. Poche, Jr., State Block, Inc., P.O. Box 642, Metairie, La. 70004."
He admitted that State Block paid LSU directly for the tickets, and that he used them for State Block purposes, to entertain the corporation's customers. He insisted, nonetheless, they were his tickets. He also said he "always" offered use of the tickets to other members of the firm, but the others never wanted to go to the games except when there was a special occasion and "they felt like they should show their face."
Although State Block always paid for the tickets, Poche never felt they were being given to him as an extra benefit from the corporation: "The tickets they paid for were my tickets. Just like if I were entertaining anybody else at a restaurant, they were my customers. State Block always reimbursed me for my expenses." He never considered the cost of the tickets as income, and it was not reported on his tax returns.
He admitted that State Block had many accounts used for entertainment purposes, for which the corporation was billed directly "I never even had to come up with my money," he said. He had an American Express credit card in his name and State Block's; he agreed it was a normal custom for entertainment expenses to be placed on that charge account, and the bills would be paid directly out of State Block's funds.
Poche testified that he left State Block in 1981, selling his stock in the corporation to Daniel Aucoin, who is the son of the corporation's president, Dennis "Heavy" Aucoin, Jr. Poche then became involved in several new corporations. (The evidence implies that at least one of these businesses is in direct competition with State Block.)
After LSU mailed out the 1981 season tickets, Poche asked "Heavy" to send the tickets to him, but Aucoin refused. As a result, Poche went in person to the LSU Athletic Department's season ticket office in Baton Rouge. He requested they issue the tickets for subsequent seasons to him in care of his new corporation, Baton Rouge Concrete Products. When the tickets for the 1982 football season were mailed to Poche's new address rather than to State Block's, State Block filed this suit.
Dennis Aucoin testified he was one of the original incorporators of State Block, and has been president of the company since 1957. He did not recall how the tickets originally were purchased, but said Poche always went to football games. Aucoin said Poche probably told him he was going to buy them, and Aucoin had probably had no objections. Poche got the tickets and the corporation used them as entertainment. State Block has paid for the tickets each and every year, he said, and the corporation charged the expense as "office and entertainment."
Aucoin admitted Poche had never informed the other stockholders of the company how he planned to use the tickets. Poche used them as he pleased, and always offered them to anyone who wanted any. Aucoin admitted that Poche could use the tickets to entertain people who were not customers of State Block.
Aucoin also admitted that he himself seldom went to LSU games, but said that he never thought the LSU tickets were owned by Poche. Aucoin said he had never particularly wanted any control over the tickets before, but wanted them after Poche left the company because his son had taken *683 over Poche's former job of entertaining customers.
Aucoin testified further that he and Poche each had an American Express card for entertainment of customers; each one's card had his own name and State Block's name on it. Documents introduced into evidence show that Poche's American Express card was in the name, "Eugene J. Poche, Jr., State Block Inc., P.O. Box 642, Metairie, La. 70004." This is the same way the LSU tickets are listed. State Block always paid the American Express bills directly.
The trial judge, after hearing the evidence, ruled from the bench that the tickets belonged to Poche. In oral reasons for judgment, the court found as a fact that Poche never discussed purchase of the tickets with anyone else in the corporation prior to buying them. He also found as a fact that the tickets were in Poche's name; he concluded that State Block's name had been on the tickets as part of the mailing address rather than as an indication of ownership.
In reaching the last conclusion, the judge placed great emphasis on LSU's action in changing the mailing address of the tickets at Poche's request. The court stated,
"I have the testimony of Mr. Poche as far as changing the address of the tickets relative to the fact that they were able to be changed and I know for a fact that there are certain times, places and procedures where the ownership of LSU tickets can be changed at a certain time of year and it's after the order forms go out and, in other words, State Block, Inc. and that address could not be taken off of the season tickets ownership unless the times and procedures were followed by Mr. Poche. So, when LSU took it off of their rolls that indicates to me, that proves to me that the ownership is in the name of Eugene J. Poche and that the address is State Block Inc., P.O. Box 642, Metairie, Louisiana 70004. So, that resolves the problem in my mind whether State Block Inc. was in the ownership name or in the address part of it."
The court also considered it important that Poche intended the tickets to be for his personal ownership, while Aucoin did not even know the tickets had been purchased when Poche first bought them. The judge felt that State Block's paying for the tickets did not affect the ownership, but rather that ownership was set at the time the tickets were initially purchased.
(We disregard evidence that when Poche first made an offer to sell his interest in the corporation, he sought to obtain the LSU season tickets as part of the sale price. Although the trial judge allowed this into evidence as an attempt to show Poche's state of mind, settlement or compromise offers are not admissible to prove liability. This case presents a different situation from the tort liability situation in which the attempt to introduce such evidence is usually made, but the same principle applies: State Block's counsel was trying to prove the central issue of the case through the settlement offer.)
The LSU season tickets order form admitted into evidence contains, among other information, the following statement:
"1. Location on top of form is reserved in your name until the deadline date. If this application card along with your remittance is not received in our office on, or before, this date we will assume that the tickets are not desired and they will be reassigned."
Our review of this case must start with analysis of the nature of the right asserted. Each party claims to "own" the tickets. The Civil Code defines ownership as "the right that confers on a person direct, immediate, and exclusive authority over a thing. The owner of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law." LSA-C.C. art. 477.
Black's Law Dictionary 1328 (5th ed. 1979) defines ticket as the following:
"In contracts, a slip of paper containing a certificate that the person to whom it is issued, or the holder, is entitled to some right or privilege therein mentioned or *684 described; such, for example, are railroad tickets, theater tickets, pawn tickets, lottery tickets, etc."
The "season tickets" in dispute here each embody two separate rights, as established by the statement quoted from the season ticket reorder form. First, possession of a season ticket entitles the holder thereof to attend particular functions or eventsin this case, obviously, football gamesat which the ticketholder is guaranteed a seat as designated on the ticket. Second, the "owner" of the ticket is granted an option to purchase season tickets for the next football season.
It thus becomes clear that the definition of ownership is patently inapplicable to the football season tickets. Looking at all the factors involved, the purchase of season tickets is more in the nature of lease than of sale:
"Lease or hire is a synallagmatic contract, to which consent alone is sufficient, and by which one party gives to the other the enjoyment of a thing, or his labor, at a fixed price." LSA-C.C. art. 2669.
"To let out a thing is a contract by which one of the parties binds himself to grant to the other the enjoyment of a thing during a certain time, for a certain stipulated price which the other binds himself to pay him." LSA-C.C. art. 2674.
"Certain incorporeal things may also be let out, such as a right of toll, and the like; but there are some which can not be the object of hire, such as a credit." LSA-C.C. art. 2679.
"The mere use, or the mere possession of a thing, may be, as well as the thing itself, the object of a contract." LSA-C.C. Art. 1884.
Leases may be made either by written or verbal contract. LSA-C.C. art. 2683. The duration and the conditions of leases are generally regulated by contract, or by mutual consent. LSA-C.C. art. 2684.
"The lessee has the right to underlease, or even to cede his lease to another person, unless this power has been expressly interdicted.
"The interdiction may be for the whole, or for a part; and this clause is always construed strictly." LSA-C.C. art. 2725.
Viewing these articles in light of the facts here, we conclude that Poche's purchase of season tickets was, in effect, a lease of the right to attend a season of LSU football games, with reserved seating an accessory of the lease, and with an option to renew the lease at the end of the football season. It is really the second right, this option to purchase tickets for future seasons, over which the parties are squabbling.
Unquestionably, when Poche initially purchased the tickets he had not been authorized by the corporation to make the purchase on its behalf. Clearly, however, the corporation ratified this action by paying for the purchase of upcoming season tickets without question. The difficulty arises in characterizing what happened. Did Poche, as "lessee" from LSU, begin "subleasing" the tickets to State Block? Or did he make an assignment of his rights in the tickets to the corporation? Or did he act as an agent for the corporation, in continuing to have his name on tickets that actually belonged to the corporation?
The trial judge determined Poche to be the "owner" of the tickets based on Poche's intention at the time of the initial purchase and also based on the fact that LSU changed the mailing addressand corporate name on the ticketsat Poche's request.
It was error, however, to consider facts not in evidencethat is, LSU's policies and procedures regarding season ticket ownership. Those procedures are facts not generally known, and therefore not subject to judicial notice. Courts may properly take judicial notice only of facts that may be regarded as forming part of the common knowledge of every person of ordinary understanding and intelligence. Miranne v. State Farm Mut. Auto. Ins. Co., 54 So.2d 538 (La.1951).
*685 Further, contrary to the trial judge's conclusion, Poche's stated intention at the time he bought the tickets cannot prevail, as between him and State Block, in determining who had the right to them. If he indeed intended the tickets to be a purely personal investment, why did he have them mailed to his business address rather than to his home address? Why did he allow the corporation to pay for the entire season, rather than reimbursing him on a pro rata basis for the games to which he took customers? It is apparent that his major purpose in buying the tickets, and his major use of them, was to further his business intereststhat is, to foster good customer relations for the corporation of which he was one-third owner.
(The problem here arises from the difficulty owners of close corporations sometimes experience in distinguishing between their individual rights and their corporation's rightsi.e., the problem of using the corporation as an "alter ego.")
We conclude that, as between Poche and State Block, the corporation was the "owner" of the season tickets, and the rights accruing therefrom. Poche's action in changing the mailing address of the tickets, therefore, may have constituted a breach of some type of fiduciary duty. The plaintiff has not sought or proven any damages, however; it has sought only return of the tickets. Both litigants have overlooked the obvious: a third party is involved, one neither named a party to the suit nor called to testifyLouisiana State University, from whom the tickets were purchasedthe "lessor" of the right to attend the football games.
In light of this, we fail to see how we can grant the relief that State Block seeks. We think we may take judicial notice that the 1983 college football season is, for our intents and purposes, ended. Thus, it would be moot for us to order Poche to return the current season's tickets to State Block. And, since all Poche has under his "lease" is an option to renew the lease for the 1984 football season, we cannot very well order LSU to renew the lease in State Block's favor rather than Poche's when LSU is not a party to the suit.
Although we do not agree with the trial judge's reasoning in determining that Poche was entitled to ownership of the tickets, as a practical matter he reached the correct result by dismissing plaintiff's suit. For the foregoing reasons, therefore, we affirm the judgment of the district court.
AFFIRMED.