ERIC SODERHOLM, Plaintiff-Appellant, v. CHICAGO NATIONAL LEAGUE BALL CLUB, INC., Defendant-Appellee.

First District (6th Division)   No. 1—91—1234

Opinion filed January 24, 1992.

Lawrence Wolf Levin and Steven R. Decker, both of Chicago, for appellant.

William F. Conlon, Richard B. Kapnick, and Jared M. Barliant, all of Sidley & Austin, of Chicago, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Eric Soderholm, filed a complaint for specific performance and sought a temporary restraining order and preliminary injunction to require defendant, the Chicago National League Ball Club, Inc. (the Cubs), to sell him 18 Cubs season tickets for the 1991 season. After a hearing, the trial court directed a finding for defendant pursuant to section 2—1110 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1110), and dismissed plaintiff's complaint. The sole issue on appeal is whether the purchase of Cubs season tickets from 1985 through 1990 gave plaintiff an option to purchase season tickets for the 1991 season.

The following relevant facts were established at the hearing. In 1985, Soderholm purchased 24 Cubs season tickets for the 1985 season. At the end of the 1985 season, defendant sent plaintiff an invoice offering him the same season tickets for the next season. Plaintiff accepted by returning payment with the invoice. Plaintiff received Cubs season tickets in this manner for the 1985 through 1990 seasons. By

the close of the 1990 season, plaintiff held 18 season tickets in his name and in the name of his company, the Eric Soderholm Batting Schools.

In January 1990, after hearing "rumors" that plaintiff was reselling tickets at a price above face value, defendant sent plaintiff a letter warning him as follows:

> "The Chicago Cubs will not sell tickets to people who resell tickets at inflated prices. Our security reports indicate that your tickets have been repeatedly sold at above face value prices.
> ***
> If you continue to resell your existing tickets your account will be in jeopardy of not being renewed in 1991."

After the 1990 season, defendant informed plaintiff by letter dated November 1990 that it would not offer plaintiff 1991 season tickets because plaintiff had resold tickets in violation of defendant's ticket policy. Defendant did not send plaintiff an invoice for the purchase of 1991 season tickets. Plaintiff sent a deposit check for 1991 season tickets which defendant returned to plaintiff. By letter dated December 20, 1990, defendant offered to sell plaintiff six season tickets for the 1991 season subject

> "to all of the terms applicable to all Cubs season tickets, including the prohibition against resale at any price above face value as well as the fact that all sales are made on a one-year basis with no automatic right of first refusal or renewal."

Defendant's "Season Ticket Fact Sheet" which accompanied invoices sent out for 1991 season tickets provided in pertinent part as follows:

> "TICKET RENEWAL PROCEDURE
> A deposit of $125 per seat must be mailed with the enclosed invoice by November 27, 1990. Full payment must be received by February 8, 1991. Seats will not be renewed if the above payment deadlines are not met. Season tickets and seat locations are offered on a one-year basis."

Plaintiff filed this action for specific performance and injunctive relief in January 1991. Plaintiff testified that no agent of defendant ever represented to him orally or in writing that he had a right of first refusal for season tickets the following season. He argued that he had a contract right to the season tickets. In addition to stating that no contract existed between the parties, defendant also claimed that the unclean hands doctrine barred equitable relief because plaintiff had resold tickets above face value contrary to the conditions on

the tickets. After the hearing, the court found that plaintiff failed to prove any contract right entitling him to a right of first refusal to purchase the season tickets. The court directed a finding for defendant and dismissed the complaint without addressing defendant's unclean hands defense.

■■ ■ Initially, we consider plaintiff's argument that his purchase of season tickets constituted an option contract. It is well settled under Illinois law that an option is a right acquired by contract consisting of two elements: a unilateral offer to sell and a contract to leave the offer open for a specified time. (*Sutton Place Development Co. v. Bank of Commerce & Industry* (1986), 149 Ill. App. 3d 513, 501 N.E.2d 143.) Moreover, an essential element for the formation of a contract is manifestation of agreement or mutual assent by the parties. (*Delcon Group, Inc. v. Northern Trust Corp.* (1989), 187 Ill. App. 3d 635, 543 N.E.2d 595.) Upon review of the record in this case, we conclude that plaintiff failed to show any evidence of mutual assent between the parties to enter a contract. Although plaintiff alleged in his complaint that he and defendant entered an agreement in 1985 and in each subsequent year granting him a right of first refusal to purchase season tickets, plaintiff produced no written contract or evidence of an oral agreement containing terms of an option contract. Indeed, plaintiff testified that defendant never represented to him, either orally or in writing, that his purchase of season tickets gave him an option to purchase tickets for the next year. In the absence of such agreement, we cannot conclude that the sale of season tickets to plaintiff from 1985 through 1990 obligated defendant to sell plaintiff season tickets in 1991. Rather, the invoice and "Season Ticket Fact Sheet" sent by defendant to season ticket holders at the end of the season constitute defendant's offer to sell season tickets for the subsequent season which the offeree accepts by timely payment. Defendant did not send an invoice to plaintiff in 1990 and therefore made no offer to sell plaintiff season tickets for the 1991 season.

Few courts have considered the rights of a season ticket holder as against the season ticket seller, and this is a case of first impression in Illinois. We consider, however, the following decisions from other jurisdictions which discuss the nature of season tickets and the rights and obligations of season ticket sellers and buyers. *In re Tucker Freight Lines, Inc.* (Bankr. W.D. Mich. July 30, 1984), No. HK83—02391, Adv. Pro. No. 84—0381; *State Block, Inc. v. Poche* (La. App. 1984), 444 So. 2d 680; *Kully v. Goldman* (1981), 208 Neb. 760, 305 N.W.2d 800.

In *Kully*, plaintiff and defendant orally agreed in 1961 that defendant would acquire eight University of Nebraska football season tickets, four for defendant and four for plaintiff. From 1961 until 1979, defendant purchased the tickets as agreed. Plaintiff filed this action in 1979 to enjoin defendant, *inter alia*, from doing anything to prejudice defendant's "future ability to receive such tickets from the University." The trial court found that an implied trust existed between plaintiff and defendant and mandatorily enjoined defendant to obtain tickets for plaintiff "for all future seasons." (*Kully*, 208 Neb. at 761, 305 N.W.2d at 801.) The Nebraska Supreme Court reversed, finding that defendant had no contractual right with the university to purchase the season tickets in the future, and, therefore, no property right existed which could be the *res* of the subject matter of a trust.

In *State Block v. Poche*, the Louisiana Court of Appeals came to an opposite conclusion about the nature of season tickets in an analogous situation. That case arose from a dispute between plaintiff-corporation and its former officer over ownership of eight season tickets to Louisiana State University football games. In prior years, the tickets were issued in defendant's name, but were paid for by plaintiff. The court relied in part upon language in the reorder form that the university sent to season ticket holders at the end of the season. The court concluded that the season tickets gave the holder, in addition to a seat at the particular games, an option to purchase tickets for the next season. The court, in characterizing season tickets as a lease with an option to renew at the end of the season, viewed the transaction as "more in the nature of a lease than [a] sale." (*State Block*, 440 So. 2d at 684.) The court, however, affirmed the trial court's dismissal of the suit on the ground that the parties failed to name the university as a party, and the court therefore lacked the authority to order the university to issue tickets in plaintiff's name.

*In re Tucker Freight Lines*, decided by the United States Bankruptcy Court, is most factually similar to this case. In *Tucker*, plaintiff-corporation had purchased 110 season tickets for University of Notre Dame football games annually for almost 40 years. In order to accommodate the demand for tickets and to allow more people to purchase tickets, the University decided to reduce the number of season tickets offered. As a result, the University did not offer plaintiff season tickets for the 1984 football season, and plaintiff sought an injunction requiring Notre Dame to sell it season tickets as previously. The court rejected plaintiff's claim that it had a contractual right to purchase tickets, stating in its oral opinion as follows:

"[Plaintiff claims] that this custom of receiving these tickets from Notre Dame University from year after year has somehow or other become a contract and that, therefore, [plaintiff] is entitled to continue to receive the same number of tickets, I guess, into perpetuity. [This] Court cannot agree. [Notre Dame]—without there being any contract, and there was no contract here, it is agreed there was no contract, Notre Dame had the right to sell tickets to whomever it chose." *Tucker Freight Lines*, slip op. at 2-3.

While none of the above cases presents controlling authority for this court, we find the reasoning of the *Kully* and *Tucker* courts persuasive, sound and consistent with Illinois law. As in those cases, no written document or oral agreement exists here supporting an option to purchase or a right of first refusal. Moreover, we reject the *State Block* court's characterization of season tickets as a lease rather than a sale.

Based upon the evidence presented and the persuasive authority from other jurisdictions, we hold that no option contract existed and plaintiff had no right of first refusal to season tickets. As such, we cannot conclude that the trial court's denial of injunctive relief and dismissal of plaintiff's complaint was against the manifest weight of the evidence. *Fields v. Sax* (1984), 123 Ill. App. 3d 460, 462 N.E.2d 983.

In his alternative argument on appeal, plaintiff claims that a season ticket is a lease, "a periodic tenancy for a period of one year," and that defendant gave improper notice of termination. We disagree and hold that a season ticket is a revocable license.

■ A license grants the licensee a right to enter upon the licensor's land and use it for a specific purpose, without giving up the licensor's legal possession and control over the property; a lease, by contrast, grants the lessee an estate and control over the property against the lessor and all the world. (*Charlton v. Champaign Park District* (1982), 110 Ill. App. 3d 554, 442 N.E.2d 915.) A license is revocable at any time at the will of the licensor (*O'Hara v. Chicago Title & Trust Co.* (1983), 115 Ill. App. 3d 309, 450 N.E.2d 1183), and mere permission to use land does not ripen into a prescriptive right regardless of the length of time that such enjoyment is permitted. *Keck v. Scharf* (1980), 80 Ill. App. 3d 832, 400 N.E.2d 503.

■ It is clear that a Cubs season ticket consists of a series of revocable licenses, rather than a lease. The record does not suggest that defendant intended to grant a season ticket holder a leasehold estate, or exclusive possession of the specific seat. Each individual ticket per-

mits the holder to enter the ball park on the date and at the time stated on the ticket for the specific purpose of attending the identified game and sitting in the specified seat, subject to all terms, conditions and policies established by the Chicago Cubs. Plaintiff conceded at oral argument before this court that an individual ticket to a public attraction is a license, but suggested that the purchase of a series of tickets somehow amounts to a lease. We disagree. Neither an individual ticket holder nor a season ticket holder is entitled to enter the ball park except upon the terms and conditions specified on the individual tickets and by defendant's policies. Nothing in the record or the case law requires us to find that season tickets constitute anything more than a series of licenses. This conclusion is consistent with the authority from other jurisdictions. (*Jacksonville Bulls Football, Ltd. v. Blatt* (Fla. App. 1988), 535 So. 2d 626; *Bickett v. Buffalo Bills, Inc.* (1983), 122 Misc. 2d 880, 472 N.Y.S.2d 245; *Foster v. Shubert Holding Co.* (1944), 316 Mass. 470, 55 N.E.2d 772; *Finnesey v. Seattle Baseball Club, Inc.* (1922), 122 Wash. 276, 210 P. 679.) Moreover, as licensor, defendant was entitled to revoke the license at its option as it did here. *O'Hara v. Chicago Title & Trust Co.* (1983), 115 Ill. App. 3d 309, 450 N.E.2d 1183.

In summary, we conclude that no contract existed entitling plaintiff to a right of first refusal to defendant's season tickets. Because we so conclude, we need not address defendant's unclean hands defense.

For the foregoing reasons, the directed finding in defendant's favor and dismissal of plaintiff's complaint was not against the manifest weight of the evidence, and accordingly, we affirm the order of the circuit court of Cook County.

Judgment affirmed.

EGAN, P.J., and LaPORTA, J., concur.