**In re Warren S. LIEBMAN, Debtor.**

**Bankruptcy No. 97 B 05229.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

May 8, 1997.

Frances Gecker, Jenner & Block, Chicago, IL, for Trustee.

Sheldon T. Zenner, Katten, Muchin & Zavis, Chicago, IL, for Chicago Bulls.

Daniel A. Zazove, Barbakoff, Zazove, & Glick, Chicago, IL, for Debtor.

Michael B. Solow, Hopkins & Sutter, Chicago, IL, Other Creditor's Attorney.

### MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

The Debtor has something greatly prized in the Chicagoland area: Seasons tickets to the Chicago Bulls basketball games. The question presented by the trustee's motion to sell "renewal rights" for those tickets is whether the holder of a season ticket has a property interest in the right to renew. The Chicago Bulls contend that he does not have any interest. He has, they argue, only an expectation of an offer to renew, and that is not property. This Court agrees with the Bulls and finds that the renewal priority afforded season ticket holders does not give rise to a property interest.

### DISCUSSION

■ Property of the estate is broadly defined by § 541 of the Bankruptcy Code as including "all legal or equitable interests of the debtor in property as of the commencement of the case." "Property interests [however] are created and defined by state law." *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). This court must therefore look to the law in Illinois to determine the nature of the opportunity to renew season tickets to sporting events. One Illinois court has addressed the issue. That court concluded that a season ticket is a series of revocable licenses, which, by definition, may be revoked at the will of the licensor, and the purchase of those licenses did not create an enforceable option to buy more in later years. *Soderholm v. Chicago Nat'l League Ball Club, Inc.,* 225 Ill. App.3d 119, 167 Ill.Dec. 248, 587 N.E.2d 517 (1st Dist.1992).

Not surprisingly, since *Soderholm* is not a bankruptcy case, it arose out of slightly different facts. There the plaintiff had bought eighteen season tickets to Cubs games for six seasons. The Cubs heard rumors that the plaintiff had been "scalping" the tickets and refused to sell him more than six season tickets. The plaintiff filed suit to compel the Cubs to sell him the season tickets, arguing that his purchase of season tickets created an option contract. The court rejected this argument. In reaching this conclusion it considered similar cases from other jurisdictions. One of the decisions it relied upon specifically addressed the issue whether a property right was created by repeated sales of seasons tickets. *See Soderholm,* 225 Ill. App.3d 119, 123, 167 Ill.Dec. 248, 587 N.E.2d 517, *discussing, Kully v. Goldman,* 208 Neb. 760, 305 N.W.2d 800 (1981).

*Kully* involved season tickets to University of Nebraska football games that had been purchased annually by the defendant for seventeen years, with an oral agreement to sell four of eight of the tickets to the plaintiff. The trial court concluded that there was an implied trust between the parties, but the Supreme Court of Nebraska reversed, "find-

ing that defendant had no contractual right with the university to purchase the season tickets in the future, and, therefore, no property right existed which could be the 'res' of the subject matter of a trust." *Soderholm,* 225 Ill.App.3d 119 at 123, 167 Ill.Dec. 248, 587 N.E.2d 517. The Illinois appellate court found *Kully* and other decisions "persuasive" and concluded that the plaintiff had no option contract, no right of first refusal and no lease. Instead the court held that the season ticket holder had a revocable license.

The few bankruptcy opinions that have addressed this issue are divided. *See In re Harrell,* 73 F.3d 218 (9th Cir.1996) (Phoenix Suns season ticket holder had no property interest that could be sold by the trustee. Although they generally gave the season ticket holder an opportunity to renew, there was no guarantee, nor any legal right, that the Suns would extend the offer to renew); *In re Tucker Freight Lines, Inc.,* Case No. HK83–02391, Adv. Pro. No. 84–0381 (Bankr. W.D.Mich. July 30, 1984)[1] (Notre Dame's past practice of selling the debtor season tickets for over forty years did not create any contract). *Cf. In re Walsh,* 1994 WL 249249 1994 U.S.App. LEXIS 14193 (4th Cir. 1994) (season tickets to the Charlotte Hornets were property of the estate where the debtor was one of the original subscribers and had paid a $10,000 deposit for the right to purchase up to 100 tickets each year); *In re I.D. Craig Service Corp.,* 138 B.R. 490 (Bankr.W.D.Pa.1992)(right to renew season tickets for the Pittsburgh Steelers was property of the estate that could be sold by the trustee over the objection of the Steelers, where the longstanding policy was to permit automatic renewal and transferability of season tickets).

The key factor that distinguishes the cases relied upon by the Bulls from the cases relied upon by the trustee is how the sports franchise treats the renewal rights of season tickets holders. The Bulls' policy is clearly stated in all pertinent material: The season ticket invoice states that "[s]eason tickets are offered on a one-year basis"; the playoff ticket invoice says that "[e]ach season and playoff ticket is a revocable license"; various letters sent to season ticket holders state that "[t]he Bulls reserve the right to review all accounts before offering season tickets for the [next] season." The Bulls also prohibit the transfer of season tickets except in very limited circumstances. The written policy provides: "NEW CONTRACTS ARE NOT TAKEN FOR PERSONAL ACCOUNTS. WE DO NOT CHANGE NAMES, ADD NAMES, NOR DO WE TAKE 'CARE OF' NAMES AND ADDRESSES. SEASON TICKETS ARE NOT TRANSFERABLE AND THEY ARE A REVOKABLE (sic) LICENSE. SEASON TICKETS ARE OFFERED ON A ONE–YEAR BASIS ONLY." (Emphasis in original).

This policy is similar to that of the Cubs and found by the court in *Soderholm* to create only a revocable license. The Bulls treatment of its season ticket holders is in marked contrast to the Steelers', which permitted transferability of season tickets and the attendant right to renew and its policy of automatically renewing season tickets upon payment. In addition, the court in *Craig Service* (the Steelers' case) heavily relied upon and analogized to a case involving the right to renew a liquor license under a Pennsylvania statute. *See In re Nejberger,* 934 F.2d 1300 (3d Cir.1991).[2]

---

**1.** The court in *Soderholm* considered both the *Kully* and *Tucker Freight Lines* decisions and found them "persuasive, sound and consistent with Illinois law." *Id,* 225 Ill.App.3d at 124, 167 Ill.Dec. 248, 587 N.E.2d 517.

**2.** The trustee also relies on a Seventh Circuit case that held that a liquor license is "property." *See Reed v. Village of Shorewood,* 704 F.2d 943, 948 (7th Cir.1983). The issue in *Reed* was whether a liquor license was property for purposes of the due process clause. Because the license was valid for one year and could only be revoked for cause, the court concluded that it

was "property" for purposes of the due process clause. This Court finds that the question whether a state granted license is property for purposes of the due process clause is a different from determining whether private parties' agreement gives rise to a property interest for purposes of § 541 of the United States Bankruptcy Code. In many instances, a state's right to revoke a license, particularly a liquor license, is strictly regulated. *See Reed,* 704 F.2d at 948 ("it [the liquor license] can be revoked only for cause, after notice and hearing, and subject to judicial review.") Here, on the other hand, we are dealing with freedom of contract between private

The trustee places significant weight on the Bulls' practice of automatically renewing season tickets if the account was current and allege that the Bulls generally only revoked season tickets for misconduct, such as scalping. The expectation that the tickets would be renewed, however realistic, does not ripen into a property interest. *See Soderholm,* 225 Ill.App.3d at 124, 167 Ill.Dec. 248, 587 N.E.2d 517 ("[a] license is revocable at any time at the will of the licensor (citations omitted) and mere permission to use land does not ripen into a prescriptive right regardless of the length of time that such enjoyment is permitted." (Citation omitted)). *See also Harrell,* 73 F.3d at 220 ("[a]lthough season ticket holders are generally awarded the opportunity to renew, there is no guarantee that the Suns will extend the offer. Season ticket holders are powerless to stop the Suns from declining to do so.")

This Court finds that a Bulls' season ticket holder has *nothing* more than a license to purchase tickets, which the Bulls may revoke at any time. The expectation that the Bulls will offer a similar license in future seasons is not an interest in property under Illinois law. Accordingly, there is no property interest that is included in this debtor's bankruptcy estate and the trustee's motion to sell the "right to renew" the season tickets is denied. The money currently held in escrow will be returned to the successful bidder.

An appropriate Order will be entered accordingly.

---

parties. Generally, the Bulls have unfettered discretion to decide to whose to sell tickets. Moreover, the holding in *Reed* that a liquor license is fourteenth amendment "property" was rejected in *Black Knight Restaurant, Inc. v. City of Oak Forest* 159 Ill.App.3d 1016, 111 Ill.Dec. 863, 865, 513 N.E.2d 109, 111 (1st Dist.1987).