**In re Lawrence Edwin LIVINGSTON, Debtor.**

**Eldon Miller, Plaintiff,**

v.

**Lawrence Edwin Livingston, Defendant,**

**and Concerning:**

**Paula M. Livingston, Garnishee.**

**No. 89–B–05764–C.**

United States District Court, D. Colorado.

Nov. 12, 1998.

Robert R. Marshall, Jr., Denver, CO, for Paula Livingston.

Robert N. Miller, Denver, CO, for Eldon Miller.

## MEMORANDUM OPINION AND ORDER

BORCHERS, United States Magistrate Judge.

THIS MATTER came before the Court on October 20, 1998 for hearing on Plaintiff's traverse of writ of garnishment. Plaintiff was represented by Robert Miller, while the Garnishee Paula M. Livingston was represented by Robert R. Marshall, Jr. The Court heard the testimony of witnesses, reviewed the materials filed, and took the matter under advisement.

### I.

The traverse by Plaintiff to the answer of Garnishee Paula M. Livingston (Garnishee) is not the first appearance of this case in a post-judgment matter. In April, 1998, a hearing was held after Plaintiff had subpoenaed Garnishee pursuant to Colo.R.Civ.P. 69(g). Plaintiff wanted the Court to order immediate transfer to him of season tickets to the Denver Broncos Football Club held by Garnishee. The Court held that there was a dispute of ownership concerning the tickets and a proceeding under Rule 69(g) was inappropriate. *In re Livingston,* 999 F.Supp. 1413, 1416 (D.Colo.1998).

As a result of the Court's ruling, a writ of garnishment was served on the Garnishee. A answer was filed by the Garnishee denying that she held any property belonging to Defendant. The Garnishee's position was and remains that she owns the Denver Broncos' season tickets and that they are not the property of Defendant. The Garnishee thus denies having any property in her possession belonging to Defendant.

The facts leading up to this point can be found in the testimony of the witnesses and file of this Court. In early 1987, Plaintiff and Defendant became partners in a real estate project located in the Perry Park subdivision in Douglas County, Colorado. Plain-

tiff agreed to invest money in the project and to realize 50% of any profits generated by the sale of lots in the subdivision.

The oral agreement provided that Plaintiff would invest $50,000 into the joint venture. Plaintiff's investment later increased to $150,000. Defendant would be responsible for obtaining and then selling the lots. Plaintiff was to be responsible for the book-keeping for the joint venture. All lots were purchased in the name of Defendant.

A partnership bank account was opened at the Colorado National Bank Tech Center. This account was to be held jointly by Plaintiff and Defendant, with the account to be used for expenses. There never was a written agreement prepared by Plaintiff and Defendant that reflected their oral agreement.

Plaintiff made payments into the partnership bank account. Money was withdrawn by Defendant to pay for the purchase of lots. Some lots were sold for a profit.

Problems arose between Plaintiff and Defendant. The relationship deteriorated between the two, and on August 6, 1987 both agreed to terminate the partnership. It was agreed that Plaintiff was to receive his $150,000, plus one-half of the profits from lots that had been sold and paid for by third parties.

Subsequently, Defendant transferred all money from the partnership account into his own private account. He secured a loan for $200,000 by pledging all lots as collateral. Defendant did not pay Plaintiff any money that was owed under the oral agreement for termination of the partnership.

After Plaintiff discovered the transfer of money into Defendant's private account, a lawsuit was commenced in state court. Defendant then filed a petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court. The petition was converted to a proceeding under Chapter 7 of the Code.

Plaintiff commenced this action for a determination of dischargeability. A trial was held in 1992, and the Bankruptcy Court held that Defendant's debt to Plaintiff was not dischargeable pursuant to 11 U.S.C. § 523(a)(4). Judgment was entered in favor of Plaintiff and against Defendant in the amount of $191,325.34.

The judgment in the Bankruptcy Court was filed in this Court for purposes of post-judgment proceedings. Plaintiff's attempt to gain control of the season tickets to the Denver Broncos through the C.R.C.P. 69(g) proceeding was not successful. A garnishment was then served on the Garnishee, who answered in a timely fashion. Plaintiff's traverse of that answer brought the case back before this Court.

The testimony of the witnesses at the hearing indicated the following. Defendant married Paula Livingston, the Garnishee, in 1986. In 1988, Defendant executed a bill of sale for property held in the family home. In exchange, the Garnishee paid Defendant $4,000 and forgave a debt in the mount of $30,000. Defendant provided to the Garnishee a bill of sale which has been admitted as Plaintiff's Exhibit 1. The document provided, in part, that: "This Bill of Sale covers all items listed on attached Schedule A, but is not limited to only those items. It is intended to cover and include property of a personal nature located at the locations listed below." One of the locations listed was the then-family home. The Garnishee testified that the Bronco tickets were maintained at that location. The Bill of Sale does not mention the Broncos tickets.

The testimony of Garnishee indicated that she had paid for the tickets from 1988 on. Some documentation was offered in the form of credit card bills which she claimed reflected her payment for the tickets. The Garnishee has her own real estate company, but does not have a separate business account or credit cards. The Garnishee testified that she was unaware that the tickets could have been transferred into her name, as she purportedly called the Denver Broncos office at some point and was told that a transfer of the tickets could not take place.

The Garnishee testified that she maintains the tickets in her desk and uses them for her business. She indicated that she had undertaken the steps to seek a transfer of the tickets into her name, though that had not been completed.

Richard Nichols testified that he is the Director of Ticket Operations for the Denver Broncos football club. He testified that the ticket transfer policy has been in effect since 1977 and allowed for transfer of tickets from one person to another. He testified that Defendant first obtained his season tickets in 1971 and that they had been renewed each year. He stated further that the tickets have remained in the name of Defendant since 1971 and that only recently was a transfer request made. It will apply only to 1999 tickets and that the transfer request has not been acted upon by the club and will not be until next year.

Mr. Nichols indicated that the transfer policy would have been communicated to all season ticket holders. He testified that the club has no record of who paid for the tickets over the last ten years. The tickets are considered to be revocable licenses, issued for one year at a time. The value of the season tickets at issue is $1,700. Mr. Nichols indicated that he is unaware of any higher value "on the street" for season tickets, as the club refuses to participate in any third-party market.

Plaintiff offered into evidence the Denver Broncos ticket information concerning the account maintained in Defendant's name and transfer form. Plaintiff's Exhibits 2 and 3. Also submitted was the request for assignment form. Defendant's Exhibit A.

The Court heard argument from counsel and then took the matter under advisement. Further argument will be waived.

## II.

▆ Post-judgment procedures in this Court are governed by Fed.R.Civ.P. 69. That rule requires that any judgment creditor may obtain execution "in accordance with the practice and procedure of the state in which the district court is held." Colorado state procedure must be used for post-judgment proceedings, except where a federal statute or rule applies. *In re Nye*, 210 B.R. 857, 859 (D.Colo.1997); *In re Kobernusz*, 160 B.R. 844, 847 (D.Colo.1993).

Colorado procedure prevented the use of a summary proceeding under Colo.Rev.Civ.P.

69(g) for transfer of disputed property. *Equisearch, Inc. v. Lopez*, 722 P.2d 426 (Colo.App.1986). Thus, the garnishment proceeding had to be commenced.

▆ The question then is whether the Garnishee is holding property of Defendant that should be transferred to Plaintiff in partial satisfaction of the outstanding judgment. The parties have not provided any legal research, but the Court has found some cases that shed light on the issue of ownership of sporting tickets. In this case, the position of the Denver Broncos club is not dissimilar to that of other professional sports teams. Season tickets are issued one year at a time and are a revocable license for the one-year period. *Soderholm v. Chicago Nat. League Ball Club, Inc.*, 225 Ill.App.3d 119, 167 Ill.Dec. 248, 587 N.E.2d 517 (Ill.App. 1992) ("It is clear that a Cubs season ticket consists of a series of revocable licenses, rather than a lease."); *In re Liebman*, 208 B.R. 38 (Bankr.N.D.Ill.1997) (Chicago Bulls season tickets only provide an expectation of an offer to renew and the expectation is not property of the bankrupt's estate); *In re Harrell*, 73 F.3d 218 (9th Cir.1996) (no property interest in Phoenix Suns season tickets renewal that could be sold as property by the trustee).

▆ This Court finds these cases to be persuasive, when coupled with the clear policy of the Denver Broncos football club that has been in place since 1977. Defendant may have transferred his 1987 or 1988 tickets to Garnishee through the Bill of Sale. He transferred nothing else, as there was no property right that existed in the renewal offer from the Broncos. Indeed, the Broncos had no duty to extend to Defendant any right to renew his tickets, as that is the standard in the professional sports industry. *Soderholm v. Chicago Nat. League Ball Club, supra*. The bill of sale and purported payment by Garnishee to Defendant meant nothing for season tickets offered to Defendant after 1988.

The offer of tickets was from the Denver Broncos to Defendant on a yearly basis. No attempt was made to transfer the tickets to the Garnishee. The Court finds that the

transfer policy has been in effect since 1977 and is binding on all season ticket holders. The Court further finds that the policy could have been ascertained by Defendant and Garnishee over the last ten years and the purported telephone call to the Broncos office was an insufficient attempt to secure information concerning the transfer policy.

The present season tickets have been issued to Defendant. Under Defendant's yearly agreements with the Broncos, those tickets are the property of Defendant, notwithstanding that the Garnishee may have paid for them. In addition, the renewal right remains in the name of Defendant. Though there can be no expectation that tickets will be offered for 1999 by the Broncos, Defendant has first right to those. That right is a license to purchase tickets. *In re Liebman,* 208 B.R. at 41. The license right is transferrable to another person, such as Garnishee. Defendant's license to purchase tickets remains in his name and is subject to execution. Plaintiff steps into the position of Defendant and must understand that there can be no expectation that the Broncos will issue tickets for another year.

The Court finds based upon the law and facts that the present tickets are property of Defendant and subject to execution. The Garnishee will transfer remaining season tickets to Plaintiff forthwith, and Plaintiff shall file a partial satisfaction of judgment for the pro rata amount of those tickets. In addition, the license held by Defendant that grants first option to renew season tickets is transferred to Plaintiff. If the Denver Broncos issue season tickets to Plaintiff, then a partial satisfaction of judgment will be filed with the Court in the amount of $1,700. Once the tickets are issued to Plaintiff by the Broncos, Plaintiff will assume the license held by Defendant for the renewal of tickets for subsequent years. The attempted transfer of rights to the Garnishee has not been acted upon by the Denver Broncos and cannot supersede Plaintiff's right to execute on the present tickets and renewal rights.

IT IS HEREBY ORDERED that the Garnishee Paula Livingston shall transfer immediately to Plaintiff the remaining season tickets for the 1998 season; and

IT IS FURTHER ORDERED that Plaintiff is granted the right to seek the renewal of season tickets held by Defendant, as that license to renew may be executed upon and the attempted transfer of that license to the Garnishee Paula Livingston is a nullity and of no effect; and

IT IS FURTHER ORDERED that Plaintiff shall file appropriate partial satisfactions of judgment as required by this order.