(28 P.3d 401)

No. 85,33▮

WICHITA STATE UNIVERSITY INTERCOLLEGIATE ATHLETIC ASSOCIATION, INC., and WICHITA STATE UNIVERSITY, *Appellees*, v. FRED L. MARRS, *Appellant*.

Opinion filed April 27, 2001.

*Fred L. Marrs*, appellant pro se.

*Ted Ayres*, general counsel of Wichita State University, and *Jeff C. Spahn, Jr.*, and *Bradley J. Brown*, of Martin, Pringle, Oliver, Wallace & Swartz, L.L.P., of Wichita, for appellees.

Before RULON, C.J., KNUDSON, J., and WAHL, S.J.

*Per Curiam*: Defendant Fred L. Marrs appeals the district court's judgment in favor of plaintiffs Wichita State University Intercollegiate Athletic Association, Inc., and Wichita State University (WSU), upon the plaintiffs' motion for summary judgment in a declaratory judgment action. We affirm.

The primary issue for our consideration is whether the district court properly interpreted a contract dealing with the sale of season tickets to men's basketball games at WSU.

Although the defendant has raised a multiplicity of issues on this appeal, the determinative question rather narrowly relates to the interpretation of the season ticket contract. Interpretation of rights under a contract is a question of law. See *City of Topeka v. Watertower Place Dev. Group*, 265 Kan. 148, 152-53, 959 P.2d 894 (1998). Therefore, assuming there is no material issue of disputed fact, the district court may properly grant summary judgment after reviewing the pleadings by construing the contract to either permit or prohibit the plaintiffs' proposed course of action. See *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 (1999).

However, upon review, this court is not bound by the district court's interpretation of the contract and may independently construe its meaning and determine the legal effect of the parties' agreement. See *Watertower Place Dev. Group*, 265 Kan. at 152-53.

Here, the district court held the plaintiffs could reasonably require the defendant to contribute to the scholarship fund in consideration for renewing his season tickets. As we understand, the basis for the district court's finding is that the plaintiffs have the right to withdraw the annual right of renewal of season tickets by providing the defendant with proper notice of disclaimer.

*Soderholm v. Chicago Nat. League Ball Club, Inc.*, 225 Ill. App. 3d 119, 587 N.E.2d 517 (1992), represents the prevailing view among those jurisdictions to consider this issue, holding that a reorder form for season tickets with an option to renew is a license for the use of specified property under specified terms. See *Soderholm*, 225 Ill. App. 3d at 124-25. In *Soderholm*, the court discussed the characteristics of a lease and of a license, determining the reorder form for season tickets to Cubs games with annual renewal did not vest the ticketholder with any rights of possession in the property, as in a lease contract, but merely with rights to use in the property, as in a license. See *Soderholm*, 225 Ill. App. 3d at 124-25.

In contrast, the Louisiana Court of Appeals held a contract for the purchase of season tickets containing an option to purchase tickets for the following season to be a lease containing certain indicia of ownership. See *State Block, Inc. v. Poche,* 444 So. 2d 680 (La. App. 1984). Because the Louisiana court relied almost entirely upon the Louisiana Civil Code in determining whether the tickets retained the nature of a sales contract or a lease contract, without considering the possibility of a contract for license, it is unclear whether Louisiana law is analogous to Kansas law. See *Poche,* 444 So. 2d at 684.

In *Gage v. City of Topeka,* 205 Kan. 143, 146-47, 468 P.2d 232 (1970), our Supreme Court discussed the difference between a license and a lease agreement. Quoting an earlier decision, the court stated:

" 'The test to determine whether an agreement for the use of real estate is a lease or a license is whether the contract gives exclusive possession of the premises against all the world, including the owner, in which case it is a lease, or whether it merely confers a privilege to occupy under the owner, in which case it is a license, and this is a question of law arising out of the construction of the instrument.' " *Gage,* 205 Kan. at 147.

Although the record of the proceedings before the district court does not contain the terms of the original agreement for season tickets created in 1962, the defendant admitted during the hearing on the plaintiffs' motion for summary judgment that the plaintiffs were allowed to impose conditions upon the use of the tickets, even to the extent of changing the price of regular season tickets. Clearly, neither party viewed the season tickets as an exclusive possession of the seats in question. Rather, the season ticket agreement obviously only provided the defendant with the use of those seats, subject to the conditions imposed by the plaintiffs who possessed legal ownership of the property, for the specified purpose of watching WSU men's basketball games. Nothing in the season ticket agreement prevented WSU from selling the use of those tickets to another person for some other purpose, such as watching a volleyball game or even a women's basketball game, should the arena be used for such purposes.

Although a license is generally revocable at the will of the licensor, an executed license—a license supported by valuable consideration—may not be revoked. See *McKim v. Carre*, 72 Kan. 461, 462, 83 Pac. 1105 (1905). Without question, the defendant offered consideration in the form of monetary compensation for the season tickets. However, the contract for season tickets unambiguously provides a limited duration for the license of one season. Thereafter, new tickets must be purchased or the license is revoked.

The defendant argues the provision of the contract allowing for an annual right of renewal creates an enforceable option contract. Assuming the defendant's interpretation of the renewal clause to be correct, the right to renew does not necessarily establish a new contract under identical provisions contained in the season ticket contract the previous year.

Because the consideration paid involves an irrevocable license to watch men's basketball for a single season, the license again becomes revocable at the end of that term. The option clause permits the ticketholder to effectively reserve his or her seats, but the option to renew merely permits the defendant to reserve the use of those seats for another season of basketball games. Nothing in the option to renew prevents the owner of the facility, in this case the plaintiffs, from imposing different conditions upon the license, or even revoking the option to renew for future seasons.

The defendant attempts to draw a meaningless distinction between conditions prohibiting the licensees from engaging in certain conduct, such as smoking or consumption of alcoholic beverages, and conditions imposing a contribution to a scholarship fund. The defendant admits the plaintiffs may legally alter the cost of the season tickets from season to season. In addition, there is no reason that the plaintiffs cannot also vary the price of the tickets based upon the location of the seating within the arena.

We conclude there is no legal prohibition against requiring a ticketholder to pay a higher price for his or her season tickets and demanding that, instead of making a lump payment as consideration for the license, for example $1,000, the ticketholders make two payments into separate funds as consideration for the license, such as $300 into general ticket receipts and $700 into a scholarship

fund. The defendant's attempt to distinguish the type of payment the plaintiffs may impose upon the license is merely an exercise in semantics without any legal basis. See *Ryco Packaging Corp. v. Chapelle Int'l, Ltd.*, 23 Kan. App. 2d 30, 37, 926 P.2d 669 (1996), *rev. denied* 261 Kan. 1086 (1997).

Here, the intent of the contract is apparent. The plaintiffs desired to grant licenses to persons similarly situated to the defendant for the specific and limited purpose of watching men's basketball games. There was no intent to transfer possessory interests in the subject property to the defendant. As the defendant obtained the license to the property through adequate consideration, a revocable license was created for one season, but as each season passes further consideration is necessary to prevent revocation. As new irrevocable licenses are extended, the plaintiffs, as property owners, are entitled to create new conditions and demand greater consideration for the licenses.

Consequently, the district court did not err in granting summary judgment in favor of the plaintiffs on this declaratory judgment action, even though the district court relied upon slightly erroneous reasoning in reaching its conclusion. See *Bergstrom,* 266 Kan. at 875-76.

We have carefully considered the other issues raised by the defendant and firmly conclude such issues have no legal merit.

Affirmed.