# Illinois Official Reports

## Appellate Court

*Wanandi v. Black*, 2014 IL App (2d) 130948

| | |
|---|---|
| Appellate Court Caption | EDWARD WANANDI, Plaintiff-Appellant, v. BRUCE BLACK, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-13-0948 |
| Filed | June 27, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's action alleging that defendant's breach of his promise to remain employed by plaintiff's company after plaintiff sold the company led to the failure of the sale and plaintiff's ultimate loss of the business through an assignment for the benefit of creditors was properly dismissed by the trial court on the ground that the action was barred by the *res judicata* effect of defendant's Kentucky action, in which he alleged that plaintiff violated an agreement under which defendant would receive a bonus and compensation if he remained with plaintiff's company, since plaintiff's Illinois action and defendant's Kentucky action were related to plaintiff's plan to sell the business, the two suits were based on the same nucleus of facts, essentially defendant's right to $1.6 million in return for agreeing to stay with plaintiff's company after it was sold, and plaintiff's action was a compulsory counterclaim in the Kentucky action. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 12-L-409; the Hon. Michael J. Fusz, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Edward J. Fitzsimons, of Lake Forest, for appellant.

Peter M. Trobe and Michael D. Furlong, both of Trobe, Babowice &
Associates, LLC, of Waukegan, and Tania E. Fuller, of Fuller Law &
Counseling, P.C., of Grand Rapids, Michigan, for appellee.

Panel

JUSTICE HUDSON delivered the judgment of the court, with
opinion.
Justices Hutchinson and Jorgensen concurred in the judgment and
opinion.

**OPINION**

¶ 1        Edward Wanandi appeals the dismissal of his complaint for damages based on Bruce
Black's alleged breach of a promise to remain employed by Wanandi's company. Wanandi's
complaint alleged that, at a critical point in negotiations to sell the company, Black repudiated
his promise to remain employed after the company's sale, instead demanding $1.6 million to
stay on, which caused the sale to fall through. Black successfully moved for the complaint's
dismissal on *res judicata* grounds based on litigation in Kentucky. Wanandi here argues that
the Illinois claim was not a compulsory counterclaim in the Kentucky case and so was not
barred by *res judicata*. He further argues that the Kentucky trial court documents on which
Black's motion to dismiss depended were not affidavits and so were insufficient to support the
motion. We hold that the nucleus of facts underlying the Kentucky litigation and the Illinois
complaint was the same: both were rooted in the events surrounding the attempted sale of the
company, and both turned on whether Black was entitled to $1.6 million. We further hold that
the trial court did not err in relying on the certified Kentucky court documents, which were the
proper documents to establish the procedural facts of the litigation. We therefore affirm.

¶ 2                                    I. BACKGROUND
¶ 3        On May 31, 2012, Wanandi filed his complaint seeking damages from Black. The
complaint alleged that Black had promised to remain employed by Trailmobile Parts and
Services Corporation (TPS) after Wanandi sold TPS's parent company, Trailmobile
Corporation (of which Wanandi was the sole shareholder), and its subsidiaries (the Trailmobile
group) to Strength Capital Partners II (Strength). Black repudiated the promise, instead
demanding $1.6 million to stay on. This caused the sale to fall through, resulting in a $7 million
loss to Wanandi.

¶ 4        According to the complaint, the Trailmobile group was in the business of supplying truck
trailers and aftermarket replacement parts in the North American market. The business was
cyclical, and starting in 2001 the group experienced a serious downward swing in sales.

Wanandi received advice that he should either expand the group or sell it; in 2005, he decided to start seeking a buyer. In 2008, he started negotiating with Strength. On May 1, 2008, Strength sent Wanandi a nonbinding letter of intent to purchase the Trailmobile group, one of the conditions of which was that Black continue in his employment.

¶ 5    Wanandi discussed Strength's conditions with Black, and Black agreed that he would stay on after the sale. Based on this assurance, Wanandi stopped seeking another purchaser. Shortly before Wanandi and Strength were to close the sale, Black "repudiated his earlier promise *** and insisted that he be paid a bonus *** of $1,600,000." Wanandi "refused to accede to this extortionate demand." Black then told Strength that he would not agree to continued employment after the sale. This caused Strength to end its negotiations with Wanandi. "Not long after the failure of the Strength transaction Trailmobile failed and was liquidated by means of an assignment for the benefit of creditors." "As a direct result of Black's repudiation, Wanandi lost his entire interest in Trailmobile," but, if "the Strength transaction had proceeded as planned, Wanandi would have received approximately Seven Million Dollars."

¶ 6    Black moved to dismiss under sections 2-619(a)(4) and 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(4), (a)(9) (West 2012)). As initially amended, the motion asserted, *inter alia*, that the claim was barred by a prior judgment entered in Kentucky case No. 11-C1-649, in which Black was the plaintiff and Wanandi the defendant. Black asserted that Wanandi's Illinois claim was, under the applicable Kentucky law, a mandatory counterclaim in the Kentucky case. Exhibits, including uncertified copies of the Kentucky complaint, answer, and jury verdict forms, accompanied the motion. The motion did not include any affidavits supporting the defense that the Kentucky judgment barred the suit.

¶ 7    In the Kentucky complaint, Black alleged that the Trailmobile group through Wanandi had promised to pay him $1.6 million under certain conditions. Specifically, Black became the president and chief executive officer of TPS "during the early 2000's." In 2001, parts of the Trailmobile group suffered financial setbacks, and, in 2002, Wanandi, seeking to keep his management intact, told Black that he would ensure that Black was rewarded if Black stayed with the company.

¶ 8    In 2006, Wanandi received purchase inquiries about the Trailmobile group. During the negotiations, Black learned from Wanandi that Wanandi did not consider the promise of a reward to be binding.

¶ 9    Black then negotiated a " 'Severance and Bonus Agreement,' " which he and Wanandi signed in 2006 (2006 Agreement). By its terms, the agreement was in effect through 2010. It would, among other things, entitle Black to compensation upon the sale of the Trailmobile group or upon the termination of his employment for reasons other than gross negligence or a felony conviction. Wanandi retained the only copy of the agreement that he had signed.

¶ 10    The 2006 sale negotiations came to nothing. However, in 2008, a new potential buyer, unnamed in Black's complaint, emerged. During negotiations with that potential buyer, Wanandi told Black that the 2006 Agreement was no longer in effect; Black disagreed. The two looked at Wanandi's signed copy of the agreement, and "it was confirmed that the 2006 Agreement remained in effect."

¶ 11    "On October 6, 2008, *** Wanandi terminated Black's employment with Trailmobile." The termination was not on either of the bases that, under the 2006 Agreement, were exceptions to the requirement for compensation. This, Black asserted, triggered the

compensation clause of the agreement and entitled him to a $1.6 million bonus and "an additional $1,300,000 in continuation bonuses and minimum compensation."

¶ 12    Wanandi answered the Kentucky complaint, alleging, among other things, that he had never signed the 2006 Agreement. The case went to a jury. It specifically found that Wanandi had signed and breached the agreement and that Black was entitled to compensatory damages of $1.6 million and punitive damages of $400,000. The jury reached that verdict on July 12, 2012.

¶ 13    Wanandi responded to Black's amended motion to dismiss the Illinois complaint. He first asserted that the Kentucky judgment was not yet final, because claims remained undecided. Second, he asserted that the motion was improper as to the defense of bar by prior judgment, because Black had not supported it with affidavits as Wanandi asserted section 2-619 required. (He argued that, because the Kentucky complaint was not sworn, the court could not consider it.) Third and finally, he argued that the Kentucky judgment could not have *res judicata* effect, because it did not " 'arise from the same transactional nucleus of facts.' " (Emphasis omitted.) Wanandi asserted that the factual issue in the Kentucky litigation was the existence of the 2006 Agreement, whereas the factual issue in this litigation was the existence of Black's 2008 promise, so that the facts at issue were unrelated.

¶ 14    Black moved to postpone further briefing while the Kentucky trial court resolved the few remaining issues. Wanandi agreed.

¶ 15    Black filed a second amended motion to dismiss on March 12, 2013. As amended, the motion included certified copies of the Kentucky court documents. The motion also noted that the Kentucky judgment was final and that Black's entitlement to $1.6 million from Wanandi was the central question in both suits.

¶ 16    Wanandi filed a response. He argued that he had appealed the Kentucky judgment, which thus remained nonfinal. He also repeated his argument that the issues were different. However, he did not raise any objection to the lack of affidavits supporting the defense of bar by prior judgment.

¶ 17    Black replied. Regarding finality, he argued that even a reversal of the Kentucky judgment could not change the status of the Illinois claim as a mandatory counterclaim in the Kentucky litigation; that is, regardless what happened on appeal, Kentucky law still required his claim to have been brought in that action.

¶ 18    The court dismissed Wanandi's complaint with prejudice as barred by the prior judgment. Wanandi moved for reconsideration; the argument largely paralleled that in his response. The court denied the motion on August 16, 2013, and Wanandi filed a timely notice of appeal.

¶ 19                                II. ANALYSIS

¶ 20    On appeal, Wanandi asserts two bases on which he claims the court was wrong to grant the motion to dismiss. He reasserts his argument that his Illinois claim was not a compulsory counterclaim in the Kentucky case. He also resurrects an argument made in his response to the original motion to dismiss, namely, that the Kentucky trial court documents were not properly before the trial court here. Specifically, Wanandi asserts that, because Black's Kentucky pleadings are not verified, they "do not establish facts for the Illinois proceeding and do not meet the requirements of Supreme Court Rule 191 and 735 ILCS 5/2-619(a)." We note that he

- 4 -

does not now challenge the finality of the Kentucky judgment, which, by Black's representation, is currently on appeal.

¶ 21 Black responds that the nucleus of facts underlying the two claims was the same: both were rooted in the events surrounding the attempted sale, and both turn on whether Black was entitled to a $1.6 million bonus. He further responds that the copies of the pleadings on which his motion relied were certified (as were all the copies of all the Kentucky court documents), and there is no dispute about the accuracy of the copies, so that the court did not err in relying on the copies. Black does not argue in his brief that Wanandi forfeited his claim that affidavits were necessary by failing to raise it in his response to the amended motion to dismiss, but he did suggest such a forfeiture in oral argument.

¶ 22 Wanandi replies, objecting to Black's statement of facts in his brief and arguing that the Kentucky pleadings were inadmissible hearsay. He reasserts that the two actions involved separate transactions. We agree with Black on both substantive issues.

¶ 23 We consider first Wanandi's argument that Black's motion to dismiss was fatally flawed because he did not support with affidavits the defense of bar by prior judgment. We recognize the plausibility of Black's argument that Wanandi forfeited this argument by not raising it in response to the amended motion that Black supported with certified copies of the Kentucky court documents. See, *e.g.*, *Hays v. Louisiana Dock Co.*, 117 Ill. App. 3d 512, 515 (1983) ("the plaintiff did not object at the trial level to the motion to dismiss for failure to present an affidavit" so the argument was not preserved for appeal). However, Black, by not arguing this forfeiture in his appellate brief, can likewise be argued to have forfeited the forfeiture. See *People v. Spears*, 112 Ill. 2d 396, 402-03 (1986). In any event, as we discuss, affidavits were unnecessary and, indeed, would have been irrelevant.

¶ 24 We consider second Wanandi's argument that his Illinois claim was based on a different core of facts than Black's Kentucky claim, so that the Illinois claim was not barred by the Kentucky judgment. We conclude that the two claims hinged on the same transaction, so that we must reject that argument also. We note that Wanandi has not raised on appeal his argument that the Kentucky judgment is not final. Thus, we do not address the issue. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) ("Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). We also note that the parties agree that Kentucky law governs the issue of whether the Illinois claim was barred by the Kentucky judgment and that the kind of bar at issue would fall under the rubric of claim preclusion.

¶ 25 Although section 2-619(a), read literally, requires affidavits in support of any grounds for dismissal that "do not appear on the face of the pleading attacked" (735 ILCS 5/2-619(a) (West 2012)), Illinois courts have never required affidavits where more conclusive and appropriate evidence exists. In other words, when affidavits would be an illogical way to prove the matter at issue, courts have not required them.

¶ 26 The classic authority on this point is *White Way Sign & Maintenance Co. v. Montclare Lanes, Inc.*, 42 Ill. App. 3d 199 (1976), addressing an essentially identical affidavit requirement in section 2-619's predecessor statute. In *White Way Sign*, proof that one defendant lacked authority to contract on the other defendant's behalf could entirely defeat the plaintiff's claim against the first defendant. See *White Way Sign*, 42 Ill. App. 3d at 200-01. The first defendant supported its motion to dismiss solely with a certified copy of a land trust agreement that showed that its only relevant relationship with the other defendant was that it held "naked legal title under the terms of [the] trust agreement." *White Way Sign*, 42 Ill. App.

3d at 200. The plaintiff argued on appeal that, given the lack of an affidavit, the trial court erred in granting the motion. *White Way Sign*, 42 Ill. App. 3d at 201. The reviewing court held that, there being no dispute about the authenticity of the trust agreement, "the certified copy of the *** agreement was sufficient to support the motion." *White Way Sign*, 42 Ill. App. 3d at 201.

¶ 27    Similarly, in *Perkaus v. Chicago Catholic High School Athletic League*, 140 Ill. App. 3d 127, 135 (1986), the reviewing court approved the defendants' introduction of copies of the Catholic League's constitution and bylaws to establish a defense that relied on the League's having had no authority to regulate the event that produced the injury at issue. As a further example, in *Christmas v. Hughes*, 187 Ill. App. 3d 453, 455 (1989), the reviewing court held that the lack of affidavits did not preclude the granting of a motion to dismiss based on a covenant not to sue, whose authenticity was undisputed.

¶ 28    In all these cases (and more that we do not discuss here), an affidavit could do no more than describe secondhand the documents on which the defense relied. For instance, if, as in *Perkaus*, a defense is based entirely on an organization's bylaws, any evidence other than those bylaws will be secondary, tangential, or wholly irrelevant.

¶ 29    The circumstances here are of the kind just described. *Res judicata* (that is, claim preclusion) "prohibits the relitigation of claims that were litigated or could have been litigated between the same parties in a prior action." *Miller v. Administrative Office of the Courts*, 361 S.W.3d 867, 871 (Ky. 2011). Thus, in deciding what newly raised claims are barred by claim preclusion, we must consider, not the *validity* of any prior claims, but rather what claims *were before the court*. Thus, of a pleading, what we care about is not the truth of its allegations, but merely that a party filed it. Although Black or his counsel in the Kentucky litigation could make affidavits describing the procedural facts of the Kentucky litigation, such affidavits would be poor substitutes for the certified court documents in the case. The trial court did not err in refusing to require such pointless evidence.

¶ 30    Wanandi cites this court's decision in *Franzen-Peters, Inc. v. Barber-Greene Co.*, 155 Ill. App. 3d 957 (1987), in support of the proposition that affidavits are necessary to support defenses based on judgments. To the extent that *Franzen-Peters* supports Wanandi's position, we do not accept its reasoning. We agree with Wanandi that the *Franzen-Peters* court did take the position that affidavits are the only proper evidence to support a section 2-619 motion. See *Franzen-Peters*, 155 Ill. App. 3d at 962. However, the decision lacks any mention of decisions such as those discussed above in which Illinois courts recognized that affidavits are not necessary when other evidence is more direct and relevant. Thus, the decision is not in the mainstream of Illinois authority. Further, the court assumed without explanation that the legal sufficiency of a detail-sparse disclosure of assets in a bankruptcy proceeding was a contested issue of fact to which affidavits of discussions with creditors were relevant. *Franzen-Peters*, 155 Ill. App. 3d at 962. The court therefore avoided the question of whether section 2-619 would require affidavits when, as a matter of logic, court documents would be the natural form of evidence.

¶ 31    We now turn to the merits of Black's bar-by-prior-judgment defense. We conclude that the Illinois claim was a compulsory counterclaim in the Kentucky case: the trial court thus did not

err in ruling that it was barred. Although, in Illinois at least, *res judicata*[1] in all its forms is an equitable doctrine that a court should apply only as fairness and justice require (*Yorulmazoglu v. Lake Forest Hospital*, 359 Ill. App. 3d 554, 563 (2005)), a dismissal based on the doctrine is subject to *de novo* review[2] (*Illinois Department of Financial & Professional Regulation v. Rodriquez*, 2012 IL 113706, ¶ 10). Wanandi thus receives the benefit of the nondeferential standard of review.

¶ 32    Under Kentucky law, which the parties agree applies, a judgment on a claim is *res judicata* not only as to the claim itself, but also as to all compulsory counterclaims. *Egbert v. Curtis*, 695 S.W.2d 123, 124 (Ky. Ct. App. 1985). Kentucky Rule of Civil Procedure 13.01 governs which counterclaims are compulsory. It states:

> "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Ky. R. Civ. P. 13.01.

¶ 33    Neither the parties nor we find cases in which Kentucky courts have construed the (same- ) transaction-or-occurrence provision of Rule 13.01. However, we agree with Wanandi that the Kentucky courts have cited section 24 of the Restatement (Second) of Judgments with approval on the general question of what claims must be joined. See, *e.g.*, *Coomer v. CSX Transportation, Inc.*, 319 S.W.3d 366, 371 n.9 (Ky. 2010) ("In determining whether there is identity of the causes of action, Kentucky courts apply the 'transactional' approach from the RESTATEMENT (SECOND) OF JUDGMENTS, § 24."). Section 24(2) states:

> "What factual grouping constitutes a 'transaction', and what groupings constitute a 'series', are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Restatement (Second) of Judgments § 24(2) (1982).

¶ 34    Given the allegations in the two cases here, any recognized standard for what constitutes a transaction, including that quoted above, will produce the same result: the two claims at issue were part of a single transaction. The gists of the two claims were two descriptions of a single event, Black's departure from TPS's employment, with *Rashomon*-like differences in framing.

¶ 35    In the Illinois case, Wanandi alleged that Black made an "extortionate demand" for $1.6 million as a condition of keeping his promise to remain with TPS under Strength's ownership. In other words, he alleged that Black wrongfully added a condition to the promise. However, we cannot accede to the suggestion that a person would stay in a job without an understanding, implicit or explicit, that the employment will be duly compensated. Further, a demand for compensation already due cannot be wrongful. Therefore, a central question, and likely *the*

---

[1]We here use "*res judicata*" in its broadest sense such that it encompasses every species of bar by prior judgment.

[2]The requirement for *de novo* review of a dismissal is not in conflict with the defense's equitable character. Although our case law suggests that a court may refuse to dismiss on *res judicata* grounds when inequity would result, no authority supports expansion of the doctrine beyond its usual limits.

central question, in the Illinois case was whether Black's demand for $1.6 million was based on an existing obligation.

¶ 36　　In his Kentucky complaint, Black alleged that $1.6 million was what he was owed under the terms of his employment, specifically the 2006 Agreement. It strains credulity to suppose that the figure that Black allegedly wrongfully demanded–$1.6 million–coincidentally arose from some source other than the 2006 Agreement. The question in the Kentucky litigation thus went to the heart of the Illinois claim.

¶ 37　　Wanandi argues that the Kentucky case was about the existence of the 2006 Agreement, an agreement motivated by the possible sale in 2006, whereas the Illinois case was about the 2008 promise, motivated by the possible sale in 2008. This description fails to take into account that the Illinois case had at its heart Black's request or demand for $1.6 million.

¶ 38　　We conclude that the existence of Black's right to the $1.6 million was at the heart of both claims. The Illinois complaint might obscure the significance of Black's right, but that does not change the right's centrality. This is exactly the kind of relitigation that the doctrine of *res judicata* aims to prevent.

¶ 39　　　　　　　　　　　　　　　III. CONCLUSION

¶ 40　　For the reasons stated, we affirm the dismissal of Wanandi's complaint.

¶ 41　　Affirmed.