LANDMARK PROPERTIES, INC., *et al.*, Plaintiffs-Appellants, v. ARCHITECTS INTERNATIONAL-CHICAGO, Defendant-Appellee.

First District (1st Division)   No. 87—0859

Opinion filed June 30, 1988.

Rock, Fusco, Reynolds & Heneghan and Garvey Novy, both of Chicago, for appellants.

Lurie, Sklar & Simon, Ltd., of Chicago (Robert Radasevich, of counsel), for appellee.

JUSTICE MANNING delivered the opinion of the court:

Plaintiffs, Landmark Properties, Inc., and Sheffield Development Corporation, appeal from an order granting summary judgment in favor of the defendant, Architects International-Chicago, and an order requiring the parties to submit to arbitration. For the reasons that follow, we affirm the decision of the trial court.

In June 1983, the plaintiffs, developers of property located at the corner of Sheffield and Fullerton known as the "Sanctuary Project," entered into an agreement with the defendant, an architectural firm, to provide services with regard to the project. In July 1983, the defendant sent a letter to the plaintiffs stating that the services required by plaintiffs to be performed on the project were not very well defined and recommended that they proceed on an hourly basis until plans were finalized.

Defendant, in October 1983, sent two copies of a form, owner/architect agreement prepared by the American Institute of Architects (AIA), to the plaintiffs requesting that they sign one copy and return it to the defendant. Defendant stated that the form, which contained a provision requiring arbitration of any disputes, could be amended. The plaintiffs never signed or returned the form. From October to December 1983, the defendant rendered services which were accepted by the plaintiffs. In December 1983, the plaintiffs accepted completed construction documents prepared by the defendant.

In January 1984, defendant sent a letter to plaintiffs regarding

the total charges for services to be rendered by the defendant on phase II of the project and offered to draft an owner/architect agreement covering phase II. Plaintiffs orally accepted the fee arrangement. Three days later, defendant sent two copies of an AIA form and the owner/architect agreement for phase II to the plaintiffs, again requesting that they sign one and return it to the defendant. Plaintiffs neither signed the agreement nor returned it to the defendant.

Throughout this time, the defendant billed the plaintiffs for services rendered and plaintiffs continually promised that the payments would be forthcoming. In March 1984, plaintiffs sent a letter to the defendant promising that payment would be forthcoming provided all services were performed in accordance with the AIA contract.

Between April 1984 and December 1984, the defendant sent correspondence to the plaintiffs requesting payment and the parties engaged in various oral and written negotiations regarding the rate of interest due on the delinquent invoices.

Defendant, in December 1984, advised the plaintiffs that it intended to file a mechanic's lien against the Sanctuary Project property. In March 1985, defendant again threatened to file a mechanic's lien and a lawsuit if necessary.

Two months later, defendant filed a demand for arbitration against the plaintiffs with the American Arbitration Association (AAA). In June 1985, the plaintiffs requested a mediation conference prior to the commencement of arbitration. In September 1985, the AAA received a submission to mediation executed by plaintiffs' counsel indicating that the defendant's claim was for $113,375.55 plus interest and that the plaintiffs' counterclaim was for $225,000 plus interest. In November 1985, plaintiffs advised the AAA that they were withdrawing from mediation because they were not bound to arbitration.

Sometime in December 1985, the defendant advised the AAA that it intended to proceed with arbitration, and subsequently the AAA notified the parties that it would proceed with the arbitration hearing unless it was stayed by the courts. The day before the arbitration hearing, on February 18, 1986, plaintiffs filed a complaint and emergency motion in the circuit court seeking to block the arbitration proceeding. At that hearing, the defendant voluntarily agreed not to proceed with arbitration, pending the trial court's determination of the arbitration issue.

Defendant subsequently filed a motion for summary judgment seeking dismissal of the action and an order requiring the plaintiffs to proceed with arbitration. The motion alleged that even though the

plaintiffs had not signed the written contracts, no question of fact existed as to whether the plaintiffs were bound to arbitrate their disputes. Defendant claimed that the plaintiffs had accepted the terms of the AIA contracts through their conduct, and consequently were subject to the arbitration provisions. The motion was supported by copies of defendant's demand for arbitration, plaintiffs' response requesting mediation prior to arbitration, a submission agreement for mediation signed by the defendant and counsel for the plaintiffs, a letter written by plaintiffs' counsel attempting to withdraw from mediation, the affidavit of James Peterson, president of Architects International-Chicago, in which he states that he has read and has personal knowledge of the facts set forth in the mediation brief and that they are true and correct to the best of his knowledge and various other correspondence between the parties regarding the project and payment.

In response to the motion, plaintiffs argued that a question of fact existed as to whether there was an arbitration agreement between the parties. They conceded that a contract existed between the parties but claimed that the AIA contract was not the embodiment of their agreement and that they never agreed to arbitrate their disputes. Their response was supported by the affidavit of Patrick Gallaher, owner of Sheffield Development Corporation and Landmark Properties, Inc., stating that he did not sign, nor did he authorize his employees to sign, a written contract with the defendant. During this time, plaintiffs unsuccessfully attempted to consolidate the present action with another suit pending in the circuit court between different parties, but involving the Sanctuary Project.

After a hearing on December 18, 1986, the trial court granted defendant's motion for summary judgment, holding that a contract existed between the parties as a result of their conduct and that it included the requirement that they submit their disputes to arbitration. Plaintiffs filed a motion to vacate that order partially based on the position that the supporting exhibits to defendant's motion for summary judgment did not comply with Supreme Court Rule 191(a) (107 Ill. 2d R. 191(a)). The trial court denied the motion to vacate and this appeal followed.

■ When a party denies the existence of an agreement to arbitrate, section 2(b) of the Uniform Arbitration Act (Ill. Rev. Stat. 1985, ch. 10, par. 102(b)) requires that the court, upon application of a party, determine the question of arbitrability as a matter of law. (*Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr* (1987), 151 Ill. App. 3d 597, 602, 503 N.E.2d 786.) In such a proceeding the court is not to consider the merits of the issue, but must summarily determine whether

an agreement to arbitrate disputes exists. If the court finds that such an agreement exists, it should order arbitration; if not, then it should stay arbitration. (*Geldermann, Inc. v. Mullins* (1988), 171 Ill. App. 3d 255.) In the present case, the trial court granted summary judgment in favor of the defendant on the question of arbitrability. Thus, the issue on appeal is whether there is a material question of fact as to the existence of an arbitration agreement between the parties.

■■ ■ Summary judgment is proper if the pleadings, depositions and affidavits on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(a).) In the present case, the plaintiffs have failed to raise a question of fact. The opposing affidavit submitted by the plaintiffs does not state that they were acting pursuant to the oral agreement or that they did not intend to be bound by the written contract. Rather, it merely states that they did not sign the written contracts, an issue which is not in dispute. Since the affidavit filed by plaintiffs fails to present a contested issue of fact, the sole issue is a question of law as to whether the plaintiffs are bound by the written contracts even though they have not been signed. See *Amelco Electric Co. v. Arcole Midwest Corp.* (1976), 40 Ill. App. 3d 118, 124, 351 N.E.2d 349.

■■ ■ It is well settled that a party named in a contract may, by his acts and conduct, indicate his assent to its terms and become bound by its provisions even though he has not signed it. (*Amelco Electric Co. v. Arcole Midwest Corp.* (1976), 40 Ill. App. 3d 118, 124, 351 N.E.2d 349; *Lundin v. Egyptian Construction Co.* (1975), 29 Ill. App. 3d 1060, 1064, 331 N.E.2d 208.) For course of conduct to act as consent to a contract, it must be clear that the conduct relates to the specific contract in question. (*Lynge v. Kunstmann* (1981), 94 Ill. App. 3d 689, 694, 418 N.E.2d 140.) Plaintiffs do not deny that a contract exists between the parties; rather, they dispute the existence of an arbitration agreement. They claim that the controlling agreement between the parties is the oral one entered into at the beginning of the relationship, not the one contained in the AIA contracts. While they concede that a party's conduct may bind it to the provisions of an unsigned contract, they maintain that a question of fact exists as to whether their actions were taken pursuant to the oral agreement or the written, unsigned AIA contracts. However, plaintiffs' actions belie their claim that they were acting pursuant to the oral agreement. The evidence indicates that the defendant sent a written contract to the plaintiffs because it felt that the services it had been required to perform were not clearly defined. The plaintiffs never rejected the form

agreements but sent correspondence to the defendant indicating that payment would be forthcoming provided all of the services were performed in accordance with the AIA contract. Not only did they request and file a submission to mediation before the AAA, but they asserted a claim of their own. Since plaintiffs maintain that there was no oral agreement between the parties to arbitrate their disputes, there can be no question but that their conduct related specifically to the written contract rather than the oral one, and summary judgment was proper.

Plaintiffs further argue that they should not be required to submit to arbitration because it is not an effective means of resolving this dispute. They cite *J. F. Inc. v. Vicik* (1981), 99 Ill. App. 3d 815, 426 N.E.2d 257, for the proposition that an arbitration agreement should not be enforced when other litigation allegedly involving some of the same facts and circumstances is pending. They maintain that the litigation between the plaintiffs and several subcontractors, who have filed suit to foreclose on mechanic's liens for services performed on the Sanctuary Project, involve the same evidence as the present case and that the cases should be consolidated to avoid the possibility of inconsistent results between the legal and arbitration forums.

■ Our courts have consistently held that arbitration is a favored method of settling disputes in Illinois, and the policy favoring arbitration will not be ignored simply because multiple parties and claims may be present. (See *Kostakos v. KSN Joint Venture No. 1* (1986), 142 Ill. App. 3d 533, 491 N.E.2d 1322.) The *Vicik* decision cited by plaintiffs has been criticized and is currently not the law in the First District. (See *Geldermann, Inc. v. Mullins* (1988), 171 Ill. App. 3d 255; *First Condominium Development Co. v. Apex Construction & Engineering Corp.* (1984), 126 Ill. App. 3d 843, 467 N.E.2d 932.) Accordingly, we hold that it was not error for the trial court to deny plaintiffs' motion to consolidate.

■ Plaintiffs' final argument is that summary judgment was improper because the exhibits filed in support of the motion did not comply with Supreme Court Rule 191(a) in that they were not verified or certified copies and because the affidavit was conclusory. We note, however, that not only did the plaintiffs fail to object to this deficiency prior to or at the hearing on the motion for summary judgment, but they referred to and incorporated parts of the documents contained in the allegedly incompetent exhibits in their own pleadings. Furthermore, by filing a counteraffidavit in response to the motion for summary judgment, plaintiffs admitted the sufficiency of the defendant's motion and affidavit. (*Kearns v. Board of Education*

(1979), 73 Ill. App. 3d 907, 914, 392 N.E.2d 148.) Based on these facts, we hold that this issue has been waived.

The decision of the circuit court of Cook County is affirmed.

Judgment affirmed.

QUINLAN and O'CONNOR, JJ., concur.