**ROBERTS & SCHAEFER COMPANY, a Delaware corporation, Plaintiff,**

v.

**MERIT CONTRACTING, INC., a Pennsylvania corporation, Defendant.**

No. 95 C 0217.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 29, 1995.

Robert J. Franco, II, Linda Urbanik Johnson, Bollinger, Ruberry and Garvey, Chicago, IL, for plaintiff.

Lawrence R. Moelmann, Hinshaw & Culbertson, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Plaintiff, Roberts & Schaefer Company ("R & S"), filed a complaint against defendant, Merit Contracting, Inc. ("Merit"), in the Circuit Court of Cook County on December 28, 1994. On January 12, 1995, Merit removed the action to this court pursuant to 28 U.S.C. § 1441 on the basis of diversity of citizenship.

R & S is a contractor incorporated in Delaware with its principal place of business in Chicago, Illinois. Merit is a Pennsylvania corporation and has its principal place of business in Monongahela, Pennsylvania. In summer 1993, R & S accepted Merit's bid to complete work in connection with the demolition, excavation, foundations and erection of a raw coal storage and handling facility at the Eighty–Four Mining Company in Pennsylvania. In September 1993, R & S sent Merit a letter confirming its purchase order relating to the work, and Merit began the job. R & S claims that during the project, disputes arose between the parties regarding delays which increased costs and postponed completion dates. R & S alleges that Merit has not submitted to R & S waivers of lien along with its invoices and has informed the owner of the Eighty–Four Mining Company of its intention to file a lien against the owner and the property for work performed under the purchase order but for which R & S has

not paid. As a result, the owner is withholding payments from R & S. R & S asserts that Merit's actions have breached the parties' contract and injured R & S.

Merit has filed a motion to dismiss or, in the alternative to transfer or stay the proceedings. In response, R & S has filed a motion to remand the case to the circuit court. For the following reasons, R & S' motion is denied, and Merit's motion to dismiss is granted on the basis that this court does not have personal jurisdiction over Merit.

### Whether this Action was Properly Removed

■ 28 U.S.C. § 1441 permits a defendant to remove an action from state court to federal court if the federal court would have had jurisdiction over the lawsuit as originally filed by the plaintiff. Merit, as the party seeking to preserve removal, has the burden of establishing that this court has jurisdiction over the present case. *Casey v. Hinckley & Schmitt, Inc.,* 815 F.Supp. 266, 267 (N.D.Ill. 1993). Remand to the state court is necessary if I decide that jurisdiction is lacking. *Id.* District judges may remand a removed case to state court based either on statutory grounds under 28 U.S.C. § 1447(c) or for non-statutory, common law reasons. *Rothner v. City of Chicago,* 879 F.2d 1402, 1406, 1410–11, 1416 (7th Cir.1989). Non-statutory grounds include the application of contract law to enforce forum selection clauses under the reasoning that defendants who have agreed to such clauses have, in effect, waived their removal rights. *See e.g. Colonial Bank & Trust v. Cahill,* 424 F.Supp. 1200, 1204 (N.D.Ill.1976); *Foster v. Chesapeake Insurance Company, Ltd.,* 933 F.2d 1207, 1215–1218 (3d Cir.1991); *Pelleport Investors v. Budco Quality Theatres, Inc.,* 741 F.2d 273, 279–81 (9th Cir.1984) (cited by *Rothner v. City of Chicago, supra,* 879 F.2d at 1416); *Karl Koch Erecting Co., Inc. v. New York Convention Center Development Corporation,* 838 F.2d 656, 659 (2d Cir.1988).[1]

■ R & S nevertheless argues that Merit waived its right to remove this lawsuit to federal court by agreeing to the following forum selection clause:

> This purchase order and all disputes between the parties hereto shall be governed by and construed according to the laws of Illinois whose Circuit Courts shall have exclusive jurisdiction to determine all such issues.

R & S Memo., Ex. A, p. 113. Courts have remanded cases involving similar forum selection clauses to state court. *See e.g. Pelleport Investors v. Budco Quality Theatres, Inc., supra,* 741 F.2d at 275, 280; *Karl Koch Erecting Co., Inc. v. New York Convention Center Development Corporation, supra,* 838 F.2d at 659. Before reaching the issue of whether this particular forum selection clause waived Merit's removal rights, it is necessary to determine whether this clause was part of the agreement between R & S and Merit.

■ In order to form a contract, each party must assent, and the essential terms must be definite and certain. *Soderholm v. Chicago National League Ball Club, Inc.,* 225 Ill.App.3d 119, 587 N.E.2d 517, 519, 167 Ill.Dec. 248, 250 (1st Dist.1992); *Bielecki v. Painting Plus, Inc.,* 264 Ill.App.3d 344, 637 N.E.2d 1054, 1061, 202 Ill.Dec. 318, 325 (1st Dist.1994). Furthermore, "a course of conduct may act as consent to a contract, [but] it must be clear exactly what contract the conduct relates to." *Lundin v. Egyptian Construction Co., Inc.,* 29 Ill.App.3d 1060, 331 N.E.2d 208, 211 (1st Dist.1975).

R & S and Merit agree that R & S accepted Merit's bid to complete work for a project at the Eighty–Four Mining Co. R & S sent a confirming letter to Merit on September 7, 1993 stating that it had issued purchase orders for Merit to complete certain construction services at the Eighty–Four Mining Co. for a price of $1,775,000.00 as well as electrical work for $265,000,000. R & S Memo., Ex. A, p. 164. This letter indicates R & S' acceptance of Merit's bid and the parties'

---

1. R & S does not argue that removal was improper for lack of diversity jurisdiction. R & S and Merit are of diverse citizenship, and R & S does not contest Merit's allegation that the amount in controversy exceeds $50,000.00. Accordingly, Merit's removal to federal court based on diversity jurisdiction is appropriate. *See* 28 U.S.C. § 1332.

agreement that Merit would perform particular work for a specific price. *Id.;* Merit's Memo., Ex. A to Ex. D. The parties' agreement to these essential terms formed a contract. *See B & C Electric, Inc. v. Pullman Bank and Trust Company,* 96 Ill.App.3d 321, 421 N.E.2d 206, 210, 51 Ill.Dec. 698, 702 (1st Dist.1981); *Bielecki v. Painting Plus, Inc., supra,* 202 Ill.Dec. at 326, 637 N.E.2d at 1062. Merit commenced work on the project in September, and on September 30th sent R & S the first invoice in the amount of $154,-620.00, which R & S subsequently paid in full. Merit Aff. ¶¶ 8, 9.

On November 1, 1993, R & S sent to Merit Purchase Order No. 9331–711 and other documents relating to the Eighty–Four Mining Co. project. R & S argues that the "Roberts and Schaefer Company Construction General Notes & Conditions" ("General Notes & Conditions"), R & S Memo., Ex. A, pp. 92–131, which contained the forum selection clause, was sent to Merit at this time and became part of its contract with Merit. However, Merit's affidavit, uncontradicted by any opposing affidavit, deposition or other evidence from R & S, states that "[n]o one from Merit signed [the documents forwarded on November 1, 1993] because the terms were unacceptable and did not represent the parties' agreement." Merit Aff. ¶ 10.

R & S has submitted no evidence that would support its position that the parties' agreement contained the General Notes & Conditions.[2] The General Notes & Conditions do not include a date, either party's signature, the purchase order number (9331–711) or any description of the job (*e.g.,* "Eighty–Four Mining Co."). The document uses the generic terms "subcontractor" and "seller" and does not identify Merit as such. Furthermore, none of the documents R & S cites to in its briefs as comprising its contract

with Merit incorporate the General Notes & Conditions by reference.

R & S argues that even if Merit never signed the contract documents it accepted the terms of the contract through its actions. It relies on *Amelco Electric Co., Inc. v. Arcole Midwest Corp.,* 40 Ill.App.3d 118, 351 N.E.2d 349 (1st Dist.1976) and *Landmark Properties, Inc. v. Architects International–Chicago,* 172 Ill.App.3d 379, 526 N.E.2d 603, 122 Ill.Dec. 344 (1st Dist.1988), in support of its position.

In *Amelco, supra,* 351 N.E.2d at 351, the subcontract documents contained a document labeled as an appendix which related to "estimated manhours to be worked by minority persons" and was to be completed and signed by the plaintiff for transmittal to the City of Chicago. The plaintiff did execute the necessary papers "and on eight separate days plaintiff submitted written contractor's reports to the City in accordance with the written agreement." *Id.* 351 N.E.2d at 354. Thus, the evidence in *Amelco* demonstrated that the plaintiff acted to carry out at least some of the written terms of the proposed subcontract. In this case, there is no evidence that Merit acted on any specific written term contained in the General Notes & Conditions or any particular document (other than the letter confirming R & S' acceptance of Merit's bid).

Moreover, in *Amelco,* the parties apparently agreed that the proposed subcontract was comprised of a discrete set of documents, which contained the term (a specific waiver of mechanics' lien) that the plaintiff was found to have accepted through its conduct. *Id.* 351 N.E.2d at 352–53. In this case, the parties have not agreed on exactly what documents constituted the proposed subcontract. Unlike the *Amelco* court which found that

---

2. The record before me consists of the complaint with its attachments, which included the purchase order sent by R & S on November 1, 1993, various change orders and a second purchase order; a praecipe for writ of summons in the Pennsylvania action and the complaint in that action; and the affidavit of Merit's president, with attachments. In ascertaining whether removal is proper, the court may examine the record as a whole. *Casey v. Hinckley & Schmitt, Inc.,* 815 F.Supp. 266, 267 (N.D.Ill.1993). R & S has referred in its brief in support of its motion to remand to various exhibits neither attached to the complaint nor supported by affidavit. Nevertheless, even if all of those documents are considered, there is no evidence to support R & S's argument.

the relevant term was in the proposed subcontract, I cannot conclude that the term at issue, found in the General Notes & Conditions which contains the forum selection clause, was part of the proposed subcontract here.

The court in *Landmark Properties* concluded that a party who never signed an architect's American Institute of Architects ("AIA") contract was nevertheless bound by its provisions because the party informed the architect that payment would be forthcoming provided all services were performed "in accordance with the AIA contract" and, in addition, filed a submission (later withdrawn) to mediation under the AIA contract. *Landmark Properties, Inc. v. Architects International–Chicago, supra,* 526 N.E.2d at 606. Although R & S argues that Merit engaged in similar conduct indicating acceptance in this case, there is no evidence to support its contention.

R & S apparently maintains that Merit's reference to a "force majeure situation" in its letter of October 12, 1993 indicates Merit's agreement to the General Notes & Conditions since the phrase "force majeure" is found in paragraph 6.8 of that document. R & S Memo., Ex. A, pp. 73, 111. I cannot agree. Merit wrote the letter to notify R & S of a "force majeure situation" which caused *Merit* to cease work. The force majeure clause in the General Notes & Conditions does not relate to force majeure circumstances encountered by Merit but only to the effect of such circumstances on R & S:

> In the event of causes beyond the control of Buyer [*i.e.,* R & S], including but not limited to acts of God, fire, the elements, strikes or labor disputes, and accidents or transportation difficulties, which would make it unreasonable in Buyer's judgment to accept delivery hereunder, Buyer shall have the option to cancel this purchase order or to delay the delivery or comple-

tion of all or part of the items, such cancellation or delay being without cost to Buyer.

R & S Memo., Ex. A, p. 111.

R & S also attempts to show that the General Notes & Conditions were incorporated into the parties' agreement via their January 27, 1994 Agreement discussing "General Conditions" in the following manner:

> All additional General Conditions including supervision, etc., required due to this accelerated and extended schedule inclusive of overtime, will be charged by Merit to R & S.

R & S Memo., Ex. A, p. 172. The phrase "General Conditions" is clearly different from "Roberts & Schaefer General Notes & Conditions."

R & S' additional contention that some of the purchase orders sent by R & S to Merit stated "[t]erms and conditions shown on Roberts & Schaefer P.O. # 9331–711 will apply" does not establish Merit's agreement to the General Notes & Conditions since the General Notes & Conditions document was not "shown on" purchase order no. 9331–711 or referenced by any of the items listed in that purchase order which have been submitted to the court.

In summary, R & S has failed to provide any evidence showing that Merit signed the General Notes & Conditions or agreed to the particular terms of that document through its actions. R & S has not rebutted Merit's sworn statement that Merit did not accept the terms of the papers sent it on November 1, 1993 (which allegedly included the General Notes & Conditions) and did not sign them. Accordingly, based on the evidence before the court, the contract between R & S and Merit did not contain the General Notes & Conditions, which includes the forum selection clause.[3] Because I find that the forum selection clause has not been shown to be a term of the parties' agreement, remand to the circuit court based on this clause is not warranted.

---

**3.** R & S apparently argues that a determination that the parties' agreement did not include the General Notes & Conditions in effect finds that the agreement had no terms and conditions. I disagree. The parties may have agreed to terms other than those in the General Notes & Conditions, such as those on the back of the purchase order or in the document titled "scope of work." Whether or not they did is a question for another day.

### *Whether this Court has Personal Jurisdiction over Merit* [4]

 Jurisdiction in this case is based on diversity of citizenship. A federal district court in Illinois has personal jurisdiction over a party involved in a diversity action only if an Illinois state court would have personal jurisdiction. *Michael J. Neuman & Associates, Limited v. Florabelle Flowers, Incorporated,* 15 F.3d 721, 724 (7th Cir.1994). The burden of proving jurisdiction over a nonresident defendant rests with the plaintiff. *Publications International Ltd. v. Simon & Schuster, Inc.,* 763 F.Supp. 309, 310 (N.D.Ill. 1991); *Wysnoski v. Millet,* 759 F.Supp. 439, 442 (N.D.Ill.1991) (citing *Saylor v. Dyniewski,* 836 F.2d 341, 342 (7th Cir.1988)). In deciding a motion to dismiss for lack of personal jurisdiction, I am obliged to accept all of the facts alleged by R & S in its complaint and not denied by Merit and to resolve all factual disputes in favor of R & S, the party seeking to establish jurisdiction. *Diamond Mortgage Corporation of Illinois v. Sugar,* 913 F.2d 1233, 1245 (7th Cir.1990) (citing *Saylor v. Dyniewski, supra,* 836 F.2d at 342); *Deluxe Ice Cream Company v. R.C.H. Tool Corp.,* 726 F.2d 1209, 1215 (7th Cir.1984) (citations omitted).

In the past, a non-resident defendant was subject to suit in Illinois only if she (1) performed one of the enumerated acts in the Illinois long-arm statute; and (2) had the minimum contacts with Illinois required by the due process guarantee. *Mors v. Williams,* 791 F.Supp. 739, 741 (N.D.Ill.1992) (citing *FMC Corp. v. Varonos,* 892 F.2d 1308, 1310 (7th Cir.1990)). As of September, 1989, however, the Illinois long-arm statute has included a "catch-all" provision, stating that

> [a] court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.

735 ILCS 5/2–209(c). This "catch-all" provision makes contiguous the parameters of jurisdiction under the Illinois long-arm statute and the requirements of due process under the United States and Illinois constitutions and, therefore, renders unnecessary an inqui-ry as to whether the defendant performed one of the enumerated acts under the long-arm statute. *Dehmlow v. Austin Fireworks,* 963 F.2d 941, 945 (7th Cir.1992); *Chemical Waste Management, Inc. v. Sims,* 870 F.Supp. 870, 873 (N.D.Ill.1994) (and cases cited therein). Accordingly, to resolve Merit's motion to dismiss based on lack of personal jurisdiction, I will determine whether exercising jurisdiction over Merit would satisfy the due process guarantees of the United States and Illinois Constitutions. *See Chemical Waste Management, Inc. v. Sims, supra,* 870 F.Supp. at 873.

 Federal due process requires an Illinois court to exercise jurisdiction over a defendant who has "certain minimum contacts with [Illinois] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Michael J. Neuman & Associates, Limited v. Florabelle Flowers, Incorporated, supra,* 15 F.3d at 725 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). A defendant who "purposefully avails himself of the privilege of conducting activities within the forum state" satisfies this test. *Dehmlow v. Austin Fireworks, supra,* 963 F.2d at 946 (citations omitted). Courts must consider foreseeability— whether the defendant's contacts with the forum state are such that he could have anticipated being haled into court in that state. *Heritage House Restaurants v. Continental Funding,* 906 F.2d 276, 283 (7th Cir. 1990).

The parties agree that Merit is a Pennsylvania corporation and has its principal place of business in Monongahela, Pennsylvania. R & S' complaint does not contain any allegations connecting Merit to Illinois. Merit's uncontradicted affidavit asserts that Merit does some work in Ohio, West Virginia and Maryland but that "Merit has never engaged in or solicited business in the State of Illinois and owns no personal or real property in Illinois." Merit Aff. ¶ 3. Moreover, Merit dealt with R & S exclusively through its

---

4. Merit's removal of this action from state to federal court did not waive its objection to in personam jurisdiction. *Allen v. Ferguson,* 791 F.2d 611, 614 (7th Cir.1986).

office in Monroeville, Pennsylvania. *Id.*[5] For example, Merit sent an invoice in the amount of $154,620.00 for services rendered in September, 1993 to R & S at its Pennsylvania office, and R & S issued Merit payment of the amount invoiced from that office. Merit Aff. ¶¶ 8, 9. The "Construction Documents" contained in Exhibit A to R & S' memorandum of law list R & S' Pennsylvania address rather than its Illinois address. The only evidence before me therefore shows that Merit does not have any, let alone minimum, contacts with Illinois. Accordingly, haling Merit into an Illinois court would violate the due process clause of the United States Constitution. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1984).

### Conclusion

For the foregoing reasons, R & S' motion to remand to the state court is denied, and Merit's motion to dismiss for lack of personal jurisdiction is granted.[6]

---

5. The unsigned subcontract agreement attached to R & S' complaint states:

> As the Work progresses ninety percent (90%) of the value of the completed Work done from month to month, shall be paid to the Subcontractor within ten (10) days of the receipt thereof by the Contractor from the Owner, provided, that a separate requisition for labor and material on a form supplied by the Contractor be delivered to the offices of the Contractor at 120 S. Riverside Plaza, Chicago, Illinois 60606 not later than the 25th day of the month during which the work covered thereby was done....

Complaint, Ex. A, p. 117. Paragraph 3 of Merit's affidavit sufficiently denies that it dealt with R & S' office in Chicago. To create a factual dispute on this issue, R & S was obligated to submit evidence such as an affidavit or deposition, which it did not.

6. My decision that this court lacks personal jurisdiction over Merit renders unnecessary a resolution of Merit's remaining motions.