2023 IL App (2d) 220141-U
No. 2-22-0141
Order filed February 24, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| MCHENRY SAVINGS BANK, | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| Plaintiff and Counterdefendant-Appellee, | ) | |
| | ) | |
| v. | ) | No. 20-CH-242 |
| | ) | |
| JAMES D. PAULSEN; DANIEL J. PAULSEN; | ) | |
| PAULSEN PAVING; PAULSEN PAVING | ) | |
| COMPANY, INC.; UNKNOWN OWNERS; | ) | |
| and NON-RECORD CLAIMAINTS, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (James D. Paulsen and Daniel J. Paulsen, | ) | Kevin G. Costello, |
| Defendants and Counterplaintiffs-Appellants). | ) | Judge, Presiding. |

JUSTICE KENNEDY delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1  *Held*: The trial court did not err in dismissing counterplaintiffs' countercomplaint. Therefore, we affirm.

¶ 2  Counterplaintiffs, James D. Paulsen and Daniel J. Paulsen, were the owners of the property located at 1405 Lamb Road, Woodstock, Illinois (the property). The property was secured by a mortgage with counterdefendant, McHenry Savings Bank (MSB). MSB initiated the underlying

foreclosure action against the Paulsens. The Paulsens filed a countercomplaint alleging that MSB had trespassed on the property, breached a settlement agreement, and tortiously interfered with a short sale agreement the Paulsens had with a third-party, Barry Lederer. The Paulsens appeal the dismissal of their countercomplaint and striking of their jury demand pursuant to MSB's combined motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2020)). For the following reasons, we affirm.

¶ 3                                    I.  BACKGROUND

¶ 4                                    A. Foreclosure Action

¶ 5     The Paulsens were business partners in the Paulsen Paving Company, Inc., which operated out of the property. On January 24, 2014, the Paulsens obtained a commercial loan from MSB in the amount of $345,000 and secured by a mortgage on the property. MSB filed a foreclosure complaint against the Paulsens on July 9, 2020. On October 6, 2020, MSB moved to bar and judicially estop James from opposing the foreclosure, on the grounds that he had elected to surrender the property in a prior bankruptcy proceeding. On January 7, 2022, the trial court denied the motion without prejudice and on January 8, 2022, MSB amended the motion to bar to include Daniel. On March 19, 2021, the trial court granted MSB's motion to bar the Paulsens from opposing the foreclosure.

¶ 6     MSB filed a combined motion for default and summary judgment on March 23, 2021, pursuant to which the trial court entered an order and judgment of foreclosure and sale on June 10, 2021. An order confirming sale and awarding possession of the property to Brink Properties, LLC, was entered on November 5, 2021. The Paulsens appealed the foreclosure judgment and order confirming sale. MSB moved to dismiss the appeal, arguing that the Paulsens' failure to obtain a stay of the judgment of foreclosure and sale or the order confirming sale rendered the matter moot.

We granted MSB's motion and dismissed the appeal. *McHenry Savings Bank v. Paulsen*, No. 2-21-0717 (2022) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 7                                B. Counterclaims

¶ 8     On January 6, 2021, the Paulsens filed their answer and countercomplaint along with a demand for a jury trial. They raised six counterclaims. Counts I through III consisted of three claims for trespass arising from three separate incidents of trespass to the property. Count IV alleged breach of contract relating to a settlement agreement between the parties regarding the short sale of the property. Count V alleged tortious interference with contract, relating to the Paulsens' contract to sell the property to Lederer. Count VI alleged fraudulent concealment relating to an appraisal and environmental testing obtained by MSB.

¶ 9     On April 19, 2021, MSB filed a motion to dismiss the Paulsens' counterclaims pursuant to section 2-619.1. On June 28, 2021, a hearing was held on the motion to dismiss, and the trial court took the matter under advisement. On July 21, 2021, the trial court dismissed counts I though III with leave to replead, and counts IV through VI with prejudice. The trial court also struck the Paulsens' jury demand. On August 18, 2021, the Paulsens moved to reconsider. On November 5, 2021, the trial court reconsidered the dismissal of counts IV and V with prejudice, and instead dismissed them without prejudice and with leave to replead. On December 2, 2021, the Paulsens filed their amended countercomplaint. On January 10, 2022, MSB moved to dismiss the amended counterclaims pursuant to section 2-619.1. On March 24, 2022, a hearing was held on MSB's motion, and on March 25, 2022, the circuit court dismissed the amended counter-complaint with prejudice.

¶ 10    The Paulsens timely appealed.

¶ 11                                II. ANALYSIS

¶ 12    On appeal the Paulsens argue that the trial court erred in dismissing counts I through V of their countercomplaint and in striking their jury demand. They do not challenge the dismissal of count VI. The standard of review on appeal from an order granting a motion to dismiss is *de novo*. *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 141 (2006).

¶ 13                             A. Counts I through III – Trespass

¶ 14    The Paulsens argue that the trial court erred in dismissing their trespass claims pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILSC 5/2-619(a)(9) (West 2020)).

¶ 15    As an initial matter, we address MSB's argument that the Paulsens' appeal of counts I through III should be dismissed as moot. MSB argues that because the foreclosure of the property has been completed and the property was sold to a third party prior to the commencement of the instant appeal, the Paulsens have no interest in the property and therefore no standing to claim that MSB damaged the property. Therefore, we should dismiss the appeal of the dismissal of the Paulsens' trespass claims as moot.

¶ 16    We disagree with MSB that the matter is moot. "Generally, in tort, a cause of action accrues, and the limitations period begins to run when facts exist that authorize one party to maintain an action against another." *Blair v. Nevada Landing Partnership*, 369 Ill. App. 3d 318, 323 (2006). MSB provides no authority for its assertion that the subsequent sale of the property served to divest the Paulsens of their trespass cause of action. See *Rosenthal v. City of Crystal Lake*, 171 Ill. App. 3d 428, 435-36 (1988) ("If a trespass is continuing, any person in possession of the land at any time during its continuance may maintain an action for trespass."); see also *Neiss v. Foster*, 64 Pa. 495, 499 (1870) ("[I]f the trespass was complete while *** plaintiff, was the owner of the land, the right of action immediately accrued to him, and was not divested by his subsequent sale to another; nor did it pass to that other by the conveyance."); *Bowman v. Hibbard*,

314 Ky. 688, 692 (1951) ("*** the fact that plaintiff transfers the title to the property after the trespass does not divest him of his right to recover damages if the injury was inflicted during the time of his control of the property."); *Otis v. Jones*, 21 Wend. 394, 397 (N.Y. Sup. Ct. 1839) ("We came to the conclusion that neither the tender nor the subsequent sale could in any way affect the remedy of the party whose property had been tortiously taken.").

¶ 17    Turning to the merits, in both the initial motion to dismiss and the motion to dismiss the Paulsens' amended counterclaims, MSB sought to dismiss the Paulsens' counts I through III pursuant to section 2-619, and attached two documents in support: the mortgage, and a business loan agreement executed by the Paulsens and MSB. MSB asserted that the Paulsens' trespass claims were precluded by terms within the mortgage and business loan agreement which permitted MSB to enter the property to attend to its interests and to make inspections and tests. The Paulsens argue that because MSB's motions to dismiss were not verified or supported by an affidavit as required by section 2-619(a), the documents upon which MSB's motions to dismiss were based lacked foundation and were hearsay. They maintain that, therefore, the trial court erred when it granted MSB's motion to dismiss counts I through III.

¶ 18    Section 2-619(a) states that, "If the grounds [for dismissal] do not appear on the face of the pleading attacked the motion shall be supported by affidavit[.]" 735 ILCS 5/2-619(a) (West 2020).

¶ 19    MSB argues that it was not necessary to support their motion to dismiss with affidavits, as the mortgage and business loan agreement were more conclusive evidence, and their authenticity was not in dispute. Further, the mortgage and note had been authenticated by affidavit in MSB's prior motion for summary judgment, and in granting MSB's motion for summary judgment the trial court had found that MSB proved the material allegations of their complaint, including the validity, authenticity, and enforceability of the mortgage and note.

¶ 20    We agree with MSB that in the instant case it was not necessary to support its motion to dismiss with an affidavit. The Code of Civil Procedure is to be liberally construed. 735 ILCS 5/1-106 (West 2020); *Vicencio v. Lincoln-Way Builders, Inc.*, 204 Ill. 2d 295, 303 (2003). To that end, although read literally section 2-619(a) requires affidavits in support of motions to dismiss whose grounds do not appear on the face of the pleadings, Illinois courts do not require affidavits where more conclusive and appropriate evidence exists. *Wanandi v. Black*, 2014 IL App (2d) 130948, ¶ 25; see *Christmas v. Hughes*, 187 Ill. App. 3d 453, 455 (1989) (copy of covenant not to sue which accompanied motion to dismiss was sufficient to support motion to dismiss without affidavit); *White Way Sign & Maintenance Co. v. Montclare Lanes, Inc*., 42 Ill. App. 3d 199, 200-01 (1976) (certified copy of land trust agreement was sufficient to support motion to dismiss where document's authenticity was not in dispute).

¶ 21    As MSB's grounds for dismissing counts I through III was based entirely on the terms of the mortgage and business loan agreement, and the authenticity of those documents was not at issue, the attachment of those documents was sufficient to support MSB's motion to dismiss Counts I through III.

¶ 22    Having determined that the business loan agreement and mortgage were sufficient to support the motion to dismiss, we now turn to the substance of the Paulsens' claims and MSB's motion to dismiss.

¶ 23    The Paulsens' original countercomplaint alleged that MSB directed its agents to enter the property on three occasions: on May 4, 2018, to conduct an appraisal, and then again on August 29 and September 17, 2018, to conduct environmental inspections and testing. All of these entries were made secretly without prior notice or permission. The environmental inspections included "destructive soil testing" and involved "multiple excavations and sample collecting." The Paulsens

alleged that the property was secured "by a locked gate and fence" and that MSB's entry onto the property was "forced." The original countercomplaint also alleged that the Paulsens had ceased business operations on the property at the end of 2017.

¶ 24 In its first motion to dismiss, MSB argued that the Paulsens' claims that it had entered the property without permission were defeated by the terms of the mortgage and business loan agreement which gave MSB permission to enter the property for the purposes of inspection and testing.

¶ 25 The mortgage provides:

"Lender's Right to Enter. Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage."

¶ 26 The business loan agreement provides:

"Inspection. [Borrower will:] Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records."

¶ 27 The mortgage also provides that the Paulsens will not "use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property[.]" It further states:

"Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests

made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person."
The business loan agreement contains a nearly identical provision.

¶ 28 In dismissing the Paulsens' initial trespass claims, the trial court stated that they appeared to be sufficiently plead, however, in light of the terms of the mortgage, the Paulsens had given MSB permission to enter the property at reasonable times for the purposes detailed in the mortgage. The trial court acknowledged that an issue of fact may exist as to whether MSB's entry was at a reasonable time, or for purposes permitted by the parties' agreement, but that MSB had not plead facts to create such an issue. As such the trial court gave the Paulsens the opportunity to replead their claims.

¶ 29 The Paulsens' amended counts I through III do not differ significantly from their original claims. Notably, they allege that the Property contained valuable equipment, materials, and their business records. They also added the following language to each count:

"a) Defendant had no lawful interest that would support or otherwise permit or authorize forced entry or other access to Plaintiffs' premises and equipment, materials and business records;

b) Defendant had no lawful basis that would support or otherwise permit or authorize forced entry or other access to Plaintiffs' premises for purposes of Plaintiffs' compliance with terms and conditions of the Defendant's Mortgage;

c) Defendant's Appraisal of the premises was not a lawful basis that would support or otherwise permit or authorize forced entry or other access to Plaintiffs' premises for a purpose of Plaintiffs' compliance with the terms and conditions of Defendant's Mortgage;

d) without prior notice to Plaintiffs, entry of Plaintiffs' premises in secret could not by reason of its secret and forced nature take place at a time that was reasonable; and

e) at no time did Defendant request nor Plaintiffs give permission for Defendant's entry upon the Plaintiffs' premises."

¶ 30    In its motion to dismiss the amended counterclaims, MSB argued as follows. The additional language failed to cure the defects in the Paulsens' complaint. The allegations that MSB had no lawful basis for entry or that the appraisal was not a lawful basis were contradicted by the plain language of the mortgage and business loan agreement. There was no requirement that MSB give prior notice before entering the property, only that the time of entry be reasonable. As the Paulsens had alleged they ceased operation of their business at the end of 2017, any time of entry would be reasonable as it would not interfere with their use of the property. In short, the Paulsens had failed to allege facts demonstrating that the time of entry was unreasonable, or that the entry was for a purpose beyond those outlined in the mortgage and business loan agreement.

¶ 31    A motion to dismiss brought pursuant to section 2-619 admits the sufficiency of the claim but asserts a defense outside of the complaint which defeats it. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. When proceeding under a section 2-619 motion, the movant concedes all well-pleaded facts set forth in the complaint, but not conclusions of law or conclusory factual allegations not supported by specific allegations of fact. *Id.* One of the enumerated bases for dismissal under section 2-619 is that the claim is barred by "affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2020).

¶ 32    If the "affirmative matter" asserted does not appear on the face of the attacked pleading, the motion must be supported by an affidavit or other evidentiary materials. *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997). Once a defendant has satisfied this initial burden,

the burden shifts to the plaintiff, who must establish the asserted defense is either "unfounded or requires the resolution of an essential element of material fact before it is proven." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993). On appeal we "consider whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Id.* at 116-17.

¶ 33 The Paulsens argue that because the issue of whether MSB had permission to enter the property is in the nature of an affirmative defense, it was MSB's burden to show that all elements of its defense had been met. Specifically, they maintain that it was MSB's burden to show that its entry onto the property was made at a reasonable time per the terms of the mortgage and business loan agreement. The Paulsens argue that the trial court erred when it required them to plead around MSB's defenses. Further, they maintain that they are not required to plead with specificity facts which are within the knowledge and control of MSB. See *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 110 (1996).

¶ 34 We disagree with the Paulsens that the trial court improperly shifted the burden to them to allege that the time of entry was unreasonable, or that the entry was made for a purpose beyond the scope of the permission created by the mortgage and business loan agreement. The Paulsens' original counterclaims alleged merely that MSB entered the property without permission to perform the appraisal and environmental inspection and testing. In its first motion to dismiss MSB presented the terms from the mortgage which provided that MSB could enter the property at any reasonable time to attend to its interests under the mortgage, and for environmental inspections and testing. This was sufficient to establish MSB's initial burden and to shift the burden onto the Paulsens to show how the entry was unreasonable. See *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116. The trial court gave the Paulsens the opportunity to do so by allowing them to

file an amended countercomplaint.

¶ 35    The Paulsens also maintain that several issues of fact exist which precluded dismissal of their claims, including the nature and extent of the destructive testing done on the land; the time, nature, and scope of MSB's entries onto the property; the type of work done on the property; and the purpose and motivations for the entry. "A genuine issue of material fact exists when the material facts are disputed, or when the material facts are undisputed but reasonable persons might draw different inferences from those undisputed facts." See *Williams v. Bruscato*, 2019 IL App (2d) 170779, ¶ 15.

¶ 36    Regarding the issue of whether the environmental inspection and testing performed exceeded the scope of what was permissible under the terms of the parties' agreement, there are no facts plead which would support such a conclusion. The Paulsens plead in a conclusory manner that the tests involved "destructive soil testing" and "multiple excavations and sample collecting." There are no details given regarding how many samples were made, what the destructive soil tests entailed, or in what manner these tests exceeded the permissions granted by the mortgage and business loan agreement.

¶ 37    Regarding the appraisal, MSB was permitted under the mortgage to enter the property "at all reasonable times to attend to Lender's interests." Having an appraisal performed on the property after the Paulsens defaulted on the note falls within that scope.

¶ 38    The Paulsens argue that because MSB entered the property secretly and by use of force, their entry could not have been at a reasonable time. They maintain that MSB entered the property by bypassing or breaking the property's fence or locked gate, in order to perform invasive and destructive environmental testing, and that such actions exceeded the limited rights to enter granted by the mortgage and constituted a "breach of the peace."

¶ 39    In support the Paulsens cite to a number of cases including *Pantoja-Cahue v. Ford Motor Credit Co.*, 375 Ill. App. 3d 49 (2007); *Chrysler Credit Corp. v. Koontz*, 277 Ill. App. 3d 1078 (1996); and *Davenport v. Chrysler Credit Corp.*, 818 S.W.2d 23 (Tenn. Ct. App. 1991). These cases address the rights and limitations of secured creditors and lessors to repossess vehicles under the Uniform Commercial Code and have little bearing on the issue of whether MSB exceeded its permissions under the terms of the mortgage and business loan agreement.

¶ 40    Further, though the Paulsens now argue that MSB broke the fence or gate, the allegations in their amended counterclaim do not actually say this. They alleged merely that the premises were secured by "a locked gate and fence" but fail to describe the fence and gate in any way, nor do they describe what portion of the property was enclosed by the fence. Likewise, they alleged that MSB entered the property "by force" with no indication of what force was used. As such, the allegations of a forced entry are conclusory and not well plead.

¶ 41    These allegations are further belied by the photographs of the property taken during the May 4, 2018, appraisal which was attached as an exhibit to the Paulsens' original countercomplaint. The property consists of a Quonset hut with two driveways extending from Lamb Road on both sides of the building. The north driveway has a triangular swing gate, which would prevent a vehicle from entering further onto the property, but a person could easily walk around or go under the gate. The southern driveway has no gate. The photographs have been photocopied and details are difficult to make out, but there does not appear to be a fence in any of the photographs, and if there is a fence, it is not one which would impede access to the property.

¶ 42    The allegations that MSB entered the property secretly are likewise unavailing, as there was no notice requirement under the terms of the mortgage and business loan agreement.

Accordingly, the trial court did not err in dismissing the Paulsens' trespass claims pursuant to section 2-619(a)(9).

¶ 43          B. Counts IV and V – Breach of Contract and Tortious Interference

¶ 44    The Paulsens original count IV alleged that the parties entered into a settlement agreement on May 11, 2019. The settlement agreement contemplated a short sale of the property to Lederer in the amount of $275,000, and that as a condition of the closing, the Paulsens would provide MSB with a total payment of $312,682. In exchange, MSB would release the mortgage. The settlement agreement also required the Paulsens and Lederer to execute an environmental waiver in favor of MSB. The Paulsens alleged that MSB breached the settlement agreement by refusing performance unless the Paulsens agreed to additional terms, namely that they enter into a consent judgment in the amount of $340,549.63. They also claimed that MSB's "refusal to evidence the Settlement Agreement by signing" resulted in them being unable to complete the sale to the Lederer. They also alleged that they took a number of actions in reliance on the settlement agreement including obtaining a cash loan in the amount of $50,000 and paying the property's real estate taxes for the years 2016 and 2017.

¶ 45    The settlement agreement attached to the countercomplaint is signed by the Paulsens and dated May 11, 2019. There are spaces for MSB to sign, but they are blank. As typewritten, section (1)(a) of the agreement states, "That the certain real estate short sale, sales contract attached hereto as Exhibit 'A' by and between Paulsens as sellers and Barry Lederer as purchaser shall close no later than May 24, 2019, as provided in that Exhibit 'A' contract[.]" In the exhibit, the "May 24" is crossed out and "June 17th" is handwritten in. Attached is a short sale contract between the Paulsens and Lederer. The closing date listed in the short sale contract is "60 days after short sale approval."

¶ 46    Count V alleged that after entering into the settlement agreement with the Paulsens, MSB tortiously interfered with the short sale contract by refusing to acknowledge its approval of the short sale and by requiring Lederer to sign an environmental indemnification agreement. As a result, Lederer was unable to obtain financing to complete the sale.

¶ 47    MSB moved to dismiss Count IV pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2020)) on the grounds that the attached settlement agreement was not signed by the bank and was therefore unenforceable. MSB also moved to dismiss count V pursuant to section 2-619(a)(9) on the basis that it was not obligated to accept less than full payment under the note, and that the bank was privileged to interfere with the contract because it was acting to protect its own interests. See *Indeck North America Power Fund, L.P. v. Norweb PLC*, 316 Ill. App. 3d 416, 431 (2000).

¶ 48    The trial court initially dismissed counts IV and V with prejudice. In dismissing count IV the trial court stated that the Paulsens' modification of the closing date for the short sale from May 24, 2019, to June 24, 2019, constituted a counteroffer, preventing the creation of a valid contract. In dismissing count V, the trial court reasoned that the validity of the settlement agreement was the lynchpin of the Paulsens' tortious interference claim. As the settlement agreement was never executed, the Paulsens' tortious interference claim failed.

¶ 49    The Paulsens moved to reconsider the dismissal of counts IV and V, arguing that a party may by their acts and course of conduct become bound by the provisions of a contract even though they have not signed it. See *Landmark Properties, Inc. v. Architects International-Chicago*, 172 Ill. App. 3d 379, 383 (1988). Additionally, they argued that equitable estoppel may serve to bar MSB from denying the validity of the settlement agreement. Upon reconsideration, the trial court granted the Paulsens leave to replead counts IV and V.

¶ 50    The Paulsens' amended count IV added the allegations that the settlement agreement had been prepared by MSB, that the Paulsens had accepted the agreement on May 11, 2019, by signing it, and that they returned the agreement to MSB on May 13, 2019. They added that the settlement agreement contained no "time is of the essence" clause, that the closing date was an accessory term rather than a material term, and that the short sale contract attached to the settlement agreement presented an alternative closing date. While count V was amended to include more particular allegations, it still hinged upon the validity of the settlement agreement.

¶ 51    MSB moved to dismiss Counts IV and V pursuant to section 2-615 on the basis that MSB's amended counterclaims did not allege any actions on behalf of MSB after the Paulsens' signing of the modified settlement agreement, let alone any which would indicate its acceptance of the Paulsens' counteroffer or preclude it from denying the validity of the settlement agreement. The trial court granted MSB's motions dismissing counts IV and V with prejudice. On appeal the Paulsens acknowledge that Count V is contingent upon the enforceability of the settlement agreement.

¶ 52    A section 2-615 motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint based on defects on the face of the pleading. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). In reviewing the legal sufficiency of a complaint, the court accepts as true all well-pleaded facts and reasonable inferences which may be drawn from those facts. *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 97 (2004). We also construe the allegations in the light most favorable to the non-moving party. *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 12 (2005). Thus, a section 2-615 motion to dismiss should be granted only if it is apparent that no set of facts can be proven which would entitle the plaintiff to relief. *Canel v. Topinka*, 212 Ill. 2d 311, 318 (2004). That being said, Illinois is a fact pleading jurisdiction, and a

plaintiff must allege facts to bring their claim within a legally recognized cause of action. *Weiss v. Waterhouse Securities, Inc.*, 208 Ill. 2d 439, 451 (2004). A plaintiff cannot rely on mere conclusions of law or fact not supported by specific factual allegations. *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 408 (1996).

¶ 53     Section 2-606 of the Code of Civil Procedure (735 ILCS 5/2-606 (West 2020)) requires that when a claim or defense is founded upon a written instrument, the written instrument must be attached to the pleading as an exhibit. "If the instrument is attached to the pleading as an exhibit, it constitutes part of the pleading for purposes of ruling on motions relating to the pleadings and for purposes of determining what issues have been raised for trial." *Garrison v. Choh*, 308 Ill. App. 3d 48, 53 (1999). Where a conflict exists between such an exhibit and the allegations of a pleading, the exhibit controls. *Id.*

¶ 54     To state a claim for breach of contract a plaintiff must show (1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages. *Village of South Elgin v. Waste Management of Illinois, Inc.*, 348 Ill. App. 3d 929, 940 (2004). "Where a contract is enforced on the basis of a single signature, it must generally be signed by the party to be charged under the contract [citation] and delivered to the non-signing party who indicates acceptance by performing." *Glabman v. Bouhall*, 81 Ill. App. 3d 966, 969 (1980). However, "in order to constitute a contract by offer and acceptance, the acceptance must conform exactly to the offer." *Whitelaw v. Brady*, 3 Ill. 2d 583, 589 (1954). "Under Illinois contract law, an acceptance requiring any modification or change in terms constitutes a rejection of the original offer and becomes a counteroffer that must be accepted by the original offeror before a valid contract is formed." *Finnin v. Bob Lindsay, Inc.*, 366 Ill. App. 3d 546, 548 (2006).

¶ 55    On appeal, the Paulsens argue that the circuit court erred in dismissing count IV because it sufficiently plead breach of contract and estoppel. They maintain that a party may through their acts and course of conduct assent to the terms of a written agreement and become bound by its provisions even though they never signed it. They also maintain that the issue of whether an unsigned contract is enforceable by means of mutual assent through the parties' course of conduct is a question of fact. See *Landmark Properties, Inc.*, 172 Ill. App. 3d at 383. The Paulsens further argue that silence may be construed as acceptance if the circumstances make it reasonable to do so. See *First National Bank of Chicago v. Atlantic Tele-Network Co.*, 946 F.2d 516, 519 (7th Cir. 1991).

¶ 56    The Paulsens also argue that MSB's defense of a lack of signature may be affected by the doctrine of equitable estoppel, and that they have alleged multiple instances of their detrimental reliance on the settlement agreement. The Paulsens maintain that because a claim of equitable estoppel creates issues of fact, the trial court erred in dismissing count IV. The Paulsens further argue that issues of fact existed as to the closing date and changes to the agreement, and that the trial court's dismissal of count IV was premature.

¶ 57    In response MSB argues that the Paulsens failed to allege any actions it took after the Paulsens signed the settlement agreement which would indicate its acceptance of the modified agreement. Nor did they allege any actions MSB undertook which the Paulsens detrimentally relied on in support of their equitable estoppel argument.

¶ 58    We agree with MSB that the Paulsens plead no facts which would support their position that MSB assented to the modified settlement agreement. As count IV is founded upon the settlement agreement, and the agreement is attached to the amended countercomplaint, it is part of the Paulsens' pleadings and it controls over contrary allegations. *Garrison*, 308 Ill. App. 3d at 53.

The modification of the short sale closing date on the part of the Paulsens constituted a rejection and counteroffer. While a party named in a contract may consent to a contract through their course of conduct, it must be clear that the conduct relates to the specific contract in question. *Landmark Properties, Inc.*, 172 Ill. App. 3d at 383. The Paulsens have not alleged any particular conduct on the part of MSB which would support their claim that MSB assented to the settlement agreement through their course of conduct. If anything the conduct which is alleged – that MSB sought to have the Paulsens sign a consent judgment and have Lederer sign an environmental indemnity agreement – would indicate that MSB was still negotiating. The Paulsens seem to tacitly acknowledge this shortcoming and argue that even silence may constitute assent under the right circumstances. However, the law ordinarily treats silence as rejection rather than acceptance (*First National Bank of Chicago*, 946 F.2d at 518) and it is the plaintiff's responsibility to plead sufficient facts to bring their claim within a legally recognized cause of action (*Weiss,* 208 Ill. 2d at 451). Paulsens have failed to do so. Their amended counterclaim contains no facts which would make it reasonable to infer that MSB's silence indicated their assent to the Paulsens' counteroffer.

¶ 59    We likewise disagree that the Paulsens have plead sufficient facts to equitably estop MSB from denying the validity of the settlement agreement. To establish equitable estoppel, the party claiming estoppel must demonstrate that: (1) the other party misrepresented or concealed material facts; (2) the other party knew at the time they made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other party intended or reasonably expected that the party claiming estoppel would act upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to their detriment; and (6) the party claiming estoppel would be prejudiced by their reliance on the representations if the other party is

permitted to deny the truth thereof. *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313-14 (2001). The Paulsens claim that they have plead several instances of their detrimental reliance on the settlement agreement. However, as discussed, the modification of the closing date constituted a rejection and counteroffer, and there are no allegations that MSB in anyway indicated that they had signed, intended to sign, or otherwise accepted the modified terms, such that the Paulsens' reliance on the settlement agreement would be reasonable.

¶ 60 Finally, we disagree with the Paulsens' assertion that questions of fact exist as to the closing date or changes to the settlement agreement. The settlement agreement is part of their pleading. It shows that the document has been signed by the Paulsens, but not by MSB, and that the closing date has been crossed out and rewritten by hand. The Paulsens alleged that they received the document from MSB, signed it and returned it. There is nothing to indicate anything other than one of the Paulsens having written in the new settlement date. The mere assertion that questions of fact might exist, without specific factual allegations, is insufficient. The Paulsens were parties to the negotiations, and signed the settlement agreement document. If there were circumstances regarding the negotiation or the signing of the document beyond what appears on its face, the Paulsens had knowledge of them and should have included such allegations in their countercomplaint.

¶ 61 For the reasons stated, the trial court did not err in dismissing count IV. As the Paulsens have acknowledged, count V rests on the validity of the settlement agreement. As the Paulsens have failed to allege sufficient facts to support the settlement agreement's validity, we likewise find that the trial court did not err in dismissing count V.

¶ 62                                      C. Jury Waiver

¶ 63 The Paulsens maintain that the trial court erred in striking their jury demand. They argue

that MSB's motions were unsupported by an affidavit, that questions exist as to whether the jury waivers are valid as they were not initialed, and that the Paulsens' claims are outside the scope of the jury waivers. As we have found that the dismissal of the Paulsens' countercomplaint was not in error, we need not reach the issue of the jury demand.

¶ 64                                    III. CONCLUSION

¶ 65    For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 66    Affirmed.